# STATE ACCIDENT FUND

*vs.*

## JULIA JACOBS' ADMINISTRATOR.

*Workmen's Compensation—Dependent Dying After Award—*
*Rights of Personal Representative.*

In the absence of a specific statutory provision to the contrary, an award to one as having been wholly dependent for support on a deceased employee, vests in such dependent when the award is made, so that, in case of the death of the dependent, his or her personal representative is entitled to the balance, if any, remaining unpaid.

*Decided March 22nd, 1922.*

Appeal from the Circuit Court for Caroline County (HOPPER and WICKES, JJ.).

Petition by T. Alan Goldsborough, administrator of Julia Jacobs, deceased, to the State Industrial Accident Commission, praying that the unpaid balance of an award made to said deceased against the State Accident Fund be ordered to be paid to said administrator. From an order of the circuit court affirming an order of the said commission granting the petition, the State Accident Fund appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*A. W. W. Woodcock, Assistant Attorney General,* with whom was *Alexander Armstrong, Attorney General,* on the brief, for the appellant.

*T. Alan Goldsborough,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

On December 10, 1915, Frank Jacobs, a son of Julia Jacobs, was killed while in the employ of Otis M. Hignutt, in Caroline County, Maryland. In *State Accident Fund et*

*al.* v. *Julia Jacobs,* 134 Md. 133, she was held to be entitled to compensation under the Workmen's Compensation Act, being chapter 800 of the Acts of 1914, and now article 101 of the Code. By an order of the State Industrial Accident Commission, passed April 24th, 1919, shortly after the decision of this Court, O. M. Hignutt, employer, and the State Accident Fund, insurer, were directed to pay her the sum of $4.50 per week, payable weekly, for the period of eight years, beginning as of the 10th day of December, 1915, as compensation arising out of the accidental injury and resultant death of her son. The sum of $801 was paid her as compensation to May 9th, 1919, and $4.50 a week from that time until July 5th, 1919, when she died, and the payments ceased—having been refused by the State Accident Fund, insurer. The appellee was appointed administrator of Julia Jacobs and claimed $1,039.50 as the balance due from July 5th, 1919, the date of the death of Mrs. Jacobs, to December 10th, 1923, being the end of the eight years. On February 20th, 1920, the Commission ordered the employer and the State Accident Fund, insurer, to pay the administrator the balance due. An appeal was taken to the Circuit Court for Caroline County, which affirmed the order of the State Industrial Accident Commission, and this appeal is taken from the action of that court. No point is made about the form of the order, and therefore it need not be referred to more fully.

The question for our determination is: Did the award for compensation made to the dependent mother so vest in her that at her death the unpaid payments passed to her personal representative, or did those payments properly cease, under our statute, at her death? We understand that Mrs. Jacobs was either actually paid up to the time of her death all sums then due under the award, or, if not, that no question is made in this case as to any of the payments due before her death, and that we are simply asked to pass on what had not become due at that time.

There seems to be considerable conflict between the deci-
sions of the courts on the subject, but most of that apparent
conflict is due to the terms of the statutes of the different
jurisdictions.   In referring to sections of the law, we will,
unless the contrary is stated, refer to the sections of article
101 in the Code, and not to those of the original act.   There
is some difference in the numbers after section 33, evidently
due to the fact that what was section 33½ of the Act of 1914
is numbered 34 in the Code (3rd vol.).   We must also bear
in mind that the accident to, and death of, Frank Jacobs oc-
curred on December 10th, 1915, and hence statutes passed
after that time, which might otherwise affect the claim, are
not applicable to this case—such, for example, as chapter
456 of the Acts of 1920, which amended a number of the sec-
tions in the Code.   That act concluded by saying "that noth-
ing in this act shall affect any rights arising from injuries
or disabilitites received prior to June 1, 1920."   In section
36, as amended by the latter act, there is a provision that
"the right to any compensation payable to any dependent
and unpaid at the date of death of any such dependent shall
survive to and be vested in the surviving dependents as the
Commission may determine, if there be such surviving de-
pendents, and if there be none such, then the compensation
shall cease."   Section 36 provides that "each employe (or
in case of death his family or dependents), entitled to re-
ceive compensation under this article, shall receive the same
in accordance with the following schedule," etc., etc. : That
is then set out in sub-sections 1, 2, 3, and 4 of that section,
and section 36 continues:

> "In case the injury causes death within the period
> of two years, the benefits shall be in the amounts and
> to the persons following:
>
> "If there be no dependents, the disbursements shall
> be limited to the expenses provided for in section thir-
> ty-seven hereof.
>
> "If there are wholly dependent persons at the time
> of the death, the payment shall be fifty per cent. of

the average weekly wages, and to continue for the remainder of the period between the date of the death and eight years after the date of the injury, and not to amount to more than a maximum of four thousand two hundred and fifty dollars, nor less than a minimum of one thousand dollars."

Then, after making provision for partly dependent persons at the time of the death, it provides that:

"The following persons shall be presumed to be wholly dependent for support upon a deceased employee: A wife or invalid husband ('invalid' meaning one physically or mentally incapacitated from earning), a child or children under the age of sixteen years (or over said age if physically or mentally incapacitated from earning) living with or dependent upon the parent at the time of the injury or death," and continues, "In all other cases, questions of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in death of such employee, but no person shall be considered as dependent unless such person be a father, mother, grandfather, grandmother, stepchild or grandchild, or brother or sister of the deceased employee, including those otherwise specified in this section."

Mrs. Jacobs was determined to be wholly dependent, and the award was accordingly made. The language of the statute, as we have seen, is "the payment shall be fifty per cent. of the average weekly wages, *and to continue for the remainder of the period between the date of the death and eight years after date of the injury."* After the Commission does what is required of it—determine the preliminary questions as to the employment, average weekly wages, the dependency of the claimant, etc.—it is required by the statute to allow the compensation as fixed, unless, of course, it is otherwise provided for somewhere in the statute.

In addition to what we have already quoted, the following sections of our statute may be referred to:

"In case of the remarriage of a dependent widow of a deceased employee without dependent children, all compensation under this article shall cease" (section 43).

"If a beneficiary shall reside or remove out of the State and shall have been such non-resident for a period of one year, the Commission may, in its discretion, convert any payments thereafter to become due to such beneficiary into a lump sum payment, not in any case to exceed twenty-four hundred dollars, by paying a sum equal to three-fourths of the then value of such payments" (section 44).

Section 50 provides for the benefits in case of death being paid to one or more of the dependents for the benefit of all, as may be determined by the Commission, and that the dependent or persons to whom the benefits are paid shall apply the same to the use of the several beneficiaries thereof, according to their respective claims upon the decedent for support, in compliance with the findings and directions of the Commission.

Section 51 is:

"In every case providing for compensation to an employee or his dependent, excepting temporary disability, the Commission may, if in its opinion the facts and circumstances of the case warrant it, allow the compensation to be paid in a partial or a total lump sum."

Section 52 provides that:

"No money payable under this article shall, prior to issuance and delivery of the warrant or voucher therefor, be capable of being assigned, charged or taken in execution or attachment."

There is also the further provision that:

"The powers and jurisdiction of the Commission over each case shall be continuing, and it may, from

time to time, make such modifications or change with
respect to former findings or orders with respect there-
to as, in its opinion, may be justified" (section 54).

The case of *Adleman* v. *Ocean Accident and Guaranty
Corporation,* 130 Md. 572, although not directly involving
the main question now before us, sheds considerable light on
it. That was a case of a partly dependent sister of a de-
ceased employee, who married after compensation had been
allowed her, and it was contended that she thereby lost the
right to compensation. JUDGE THOMAS, speaking for the
Court, said: "This obligation to pay and the right to receive
are not, by the terms of the Act, made conditional upon the
beneficiary remaining unmarried, or dependent upon his or
her subsequent state of dependency, and nowhere in the act
is there found express authority to the Commission to abate
the compensation. The relief to the dependents of the de-
ceased employee provided by the act is in lieu of that afforded
by the common law, and sub-section 11 of section 62 of the
Act (63 of the Code), defines 'beneficiary' as 'a husband,
wife, child, children or dependents of an employe in whom
shall vest a right to receive payment under the Act.' The
Act defines the duties and powers of the Commission, and in
the absence of a clear grant of such power, we would not be
justified in holding that it is authorized to abate compensa-
tion expressly provided by the Act as 'sure and certain relief'
for those who were partly dependent upon a deceased em-
ployee, and whose right thereto has been determined and has
vested in accordance with the terms of the Act."

It was contended in that case that the provisions of section
53 of the Act (54 of the Code), quoted above, authorized the
Commission to abate or modify an award made to a depend-
ent sister who afterwards married, but we held that the ques-
tion of dependency and the amount of benefits depended
upon facts existing at the time of the injury, and any modi-
fication or change by the Commission of its former findings
must likewise be based upon the facts existing at that time.

It was also contended that under sections 49 (50 of the Code) and 53 (54 of the Code), the Commission could re-apportion the compensation among the dependents, and that it could abate it entirely, but JUDGE THOMAS, after saying that the statute fixes the amount, said: *"That amount* cannot be changed by the Commission, but must be paid to one or more of the dependents, *for the benefit of all,* or may be apportioned among them as the Commission may deem just and equitable."

The Commission in that case awarded $12.50 weekly to the mother and sister of a deceased employee, and apportioned it between them equally. We held that the marriage of the sister did not affect her right to receive compensation and did not authorize the Commission to abate or modify the award made to the sister.

JUDGE THOMAS also referred to section 42 (43 of Code) as to remarriage of a dependent widow, and said: "But there is no such provision in reference to other dependents mentioned in the Act, and it is reasonable to conclude that if the Legislature, while dealing with the subject of abatement of compensation, had intended the compensation provided for a sister to abate upon her marriage, it would have so declared in express terms."

It is true it has been found necessary or desirable by the Legislature of this State, as well as those of other states, to amend this class of laws considerably, as experience in laws involving such radical changes as the compensation acts must cause those connected with the enforcement of them to see that changes are necessary, but it would be difficult to conclude from an examination of our statute, as it was in 1915, that it was intended that, after a mother of an employee, who died as a result of an accident when engaged in such work as our statute covers, had received an award of compensation by reason of his death, but died before receiving all of the compensation, her administrator would not be entitled to the amount unpaid. It is true that primarily the

statute is intended to protect employees and their dependents, but in the absence of some definite expression by the Legislature to the contrary, it cannot be held that the administrator of a deceased dependent, who had received such an award as the one before us, cannot recover what was still due. While the argument is made, and it may be admitted to have force, that the statute was intended to provide for dependents, in case of the death of employees, and not for others, the same argument was made in the *Adleman Case,* and under that decision, although a sister might, after marriage, have been amply provided for by her husband and be in no respect dependent upon the compensation received, as the result of her brother's death, we held that it could not be abated or modified, because the statute had not authorized that to be done.

It is true that JUDGE THOMAS, in the *Adleman Case*, said: "When we speak of the right to the compensation as resting in the beneficiary, we do not mean to indicate that the right of those partly dependent to the compensation awarded them is a vested right in the sense that if they should die before the completion of the weekly payments allowed them, the right to the same would devolve upon their personal representatives," but he immediately followed that by saying: "That question is not presented by the record, and we are not to be understood as expressing any opinion in regard to it," which was a very proper precaution to take by reason of the language he had just used.

We are of opinion, however, that as the statute then stood, it did not authorize the State Accident Commission to hold that upon the death of Mrs. Jacobs the award of compensation abated or ceased to be payable. If the insurer had been an insurance company, instead of the State Accident Fund, there would have been nothing in the contract of insurance, or in the statute which could have been read into it, providing that the payments should cease upon the death of Mrs. Jacobs within the eight year period, but, on the contrary, the

statute said they should continue during that period and the order of the Commission was that they should be so paid. Moreover, when the insurance is taken out, there is no allowance in case of death of a dependent when the premium is paid. It will not be contended that the State Accident Fund was to have an earlier release from the payments than an insurance company, accepted by the Commission, would have had. If it is an unnecessary or improper burden to be put on an insurance company, or unfair advantage given to the estate of a sole dependent who died before the eight year period had elapsed, it has now been corrected by the statute, and perhaps there are few, if any other cases in this State affected by our decision.

The case of *State ex rel. Munding* v. *Industrial Commission,* 92 Ohio St. 434, Ann. Cas. 1917 D, 1162, is entitled to much weight, as there is great similarity between the Ohio statute and ours, which was in force when the accident resulting in the death of young Jacobs occurred. It has been said that the Maryland Act of 1914 was largely borrowed from the Ohio statute, except as to amounts in reference to the award of compensation, and whether that be correct or not, there is certainly a very striking similarity between them. CHIEF JUSTICE NICHOLS, of the Ohio Supreme Court, said a part of section 35 of that statute, which is in substance the same as our 36, excepting as to amounts, "is practically conclusive of the case, as it has every element necessary to confer a vested right. A fixed amount is awarded to a definite person as a matter of right, with no language suggesting in any way an abatement of the award on the death of the person to whom it is made, prior to the payment of the same in full, and we must hold that it speaks for itself, unless some other section or sections of the Act condition or limit the right to this compensation." He then referred to their section 36, which corresponds with our section 50, their sections 39, 40 and 41, which correspond with our sections 54, 51 and 52.

That case decided that an award of compensation under their section 35 (which corresponds with our section 36) to a wholly dependent person, vests in the dependent, when the award is made, so that, in case of the death of said dependent, his or her personal representative is entitled to the balance, if any, remaining unpaid. That is a decision on the precise question under a statute which is, in substance, exactly the same as ours, in so far as this point is involved. In the *Adleman Case* JUDGE THOMAS quoted from that opinion, where the court held that if section 39 of their statute (section 54 of ours) could be construed to give the Board power to abate an award under paragraph 2 of section 35 (36 of ours), in case of the death of a dependent prior to the completion of the payments, it would necessarily follow that it could be construed to give jurisdiction to determine dependency at any time during the period covered by the payments, "instead of having its determination expressly limited by the statute, although it is, to dependency at the time of death." The Ohio court said: "This construction would be directly contrary to the statutory requirements."

The English cases have adopted the same view, although their statute is not so similar to ours as the Ohio statute. In *United Collieries* v. *Simpson,* A. C. (1909) 383, LORD LOREBURN said, in discussing the question: "No doubt this act was intended to save dependents from the loss they might sustain by being deprived of the support they previously had from the deceased workman, and if the dependents themselves die they require it no longer. And it seems anomalous to enforce payment when no dependent is still living to require support. The Act, however, provides a fixed sum, and this must be taken as the statutory provision, whether in the end it is needed or not. Perhaps if this result had been foreseen, it might have been guarded against; but that cannot affect the judgment of a court of law."

Our Legislature in 1920 apparently thought it was a mistake and changed the statute, but that is not for the court

to do.  In *Darlington* v. *Roscoe* (1907), 1 K. B. 219, the court held that the right to compensation of a sole dependent who died before an award was made, passed to her legal representative.

The appellant has cited some cases to the contrary. In *Murphy's Case*, 224 Mass. 592, the Supreme Court of Massachusetts reached a contrary conclusion, but in the course of the opinion that court said: "The opposite result has been reached in England and in Ohio. But both of those decisions were founded on provisions of the acts there in question, which were not like the provisions of our Workman's Compensation Act." In *Barton's Case*, 225 Mass. 349, the last case was followed without further discussion. *Bott's Case*, 230 Mass. 152, was a re-marriage case, and the court reached a different conclusion from what we did in *Adleman's case.* In *Wozneak* v. *Buffalo Gas Co.*, 175 N. Y. App. Div. 268, the court referred to a statute authorizing the Commission to "review any award, and on such review, may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this chapter." In *Erie R. R. Co.* v. *Calloway,* 91 N. J. L. 32, the statute in force at the time of the award (Act of 1911) contained no provision for a case where an employee died from a cause other than the accident during the period of payment for permanent injury. In 1913 the statute was amended so that the remaining payments could be made to his or her dependants, and the effort was made to have that declared retroactive, which the court declined to do. In *O'Donovan* v. *Cameron* (1901), 2 Ir. Rep. 633, the sole total dependent of a workman killed by an accident died before she filed or served a claim for compensation. The personal representative of the deceased workman subsequently took proceedings to recover compensation to be applied for the benefit of the dependent and in payment of her debts. It was held that neither her personal representative nor that of the deceased workman could re-

cover, but that case was expressly disapproved by the House of Lords in *United Collieries* v. *Simpson, supra.* In *Matecney* v. *Vierling Steel Works,* 187 Ill. App. 448, that court said that they did not believe that their act contemplated that the employer should pay any money to non-dependents. That is spoken of in the note in *Ann. Cas.* 1917 D. as a *dictum,* and was said in discussing the propriety of including an allowance in a lump sum to a dependent. It was decided by an intermediate court, although entitled to great respect, and the opinion was delivered in the course of construing the Illinois statute, which is not like ours. In *Ray* v. *Industrial Insur. Commn.,* 99 Wash. 176, it was held that the award did not survive, but the decision was based on a statute in that state which is different from ours, and in *Lahoma Oil Co.* v. *State Industrial Commn.,* 175 Pac. 836 (Okla.), there was a wholly different statute from ours.

We have thus referred at some length to the cases cited by appellant, but after all it must largely depend upon the language of the statute of the particular state where the question is being considered. As we have already indicated, our statute, in force at the time of this accident, is so very similar to the Ohio statute under consideration in the *Munding Case,* and the facts are so nearly alike, that insofar as we should be influenced or governed by decisions of other courts, it would be difficult, if not impossible to find a case in another jurisdiction which we would be more justified in following than that—especially, as the conclusion is in our judgment well reasoned and is based on the sound ground that courts should be governed by the plain language of the statute, and not by a strained construction making the Legislature say something which it did not say, even if the court was inclined to differ as to the wisdom of the legislation. That is not for the court to determine—its duty is to ascertain what the Legislature said, and if it had the right to say what it did say, to be governed by it. The order of the court will be affirmed.

*Order affirmed, with costs.*