## COCA-COLA BOTTLING WORKS ET AL. *v.* CHESTER LILLY.

[No. 21, October Term, 1927.]

240

*Decided January 13th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Allan Sauerwein,* with whom were *George W. Lindsay, Paul F. Due, A. Freeborn Brown,* and *Sauerwein & Lindsay,* on the brief, for the appellants.

*John S. Young,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, Chester Lilly, an unmarried man, twenty-three years of age, employed by the Coca-Cola Bottling Company as chauffeur, while driving a truck on the public roads of Harford County, on the 19th day of September, 1925, collided with the back of a wagon. As a result of this collision, he was thrown against the steering wheel, causing contusion of the abdomen and left testicle.

The State Industrial Accident Commission, upon application of the injured man for compensation, and after hearing on the 3rd day of November, 1925, held that he was temporarily totally disabled as a result of such injury, and the commission ordered that compensation at the rate of $16.67 per week, payable weekly, be paid to Lilly by the Coca-Cola Bottling Company, the employer, and the Casualty Reciprocal Exchange, the insurer, the appellants, during the continuancy of his disability, subject to the provisions of the Workmen's Compensation Law, the compensation to begin as of the 25th day of September, 1925.

Afterwards, on the 29th day of December, 1926, upon application of the appellants, the employer and insurer, another hearing was had before the Industrial Accident Commission, to determine the nature and extent of the appellee's disability. At this hearing, the commission found that the claimant had sustained a permanent partial disability, in addition to his temporary total disability, and thereupon it rescinded its order of November 3rd, 1925, and, in lieu thereof, ordered the employer and insurer to pay unto the claimant Chester Lilly, "compensation at the rate of $16.67 per week, payable weekly from September 25th, 1925, to October 31st, 1926, inclusive, for temporary total disability, and, in addition thereto, compensation at the rate of $16.67, per week, payable weekly for the period of fifty weeks, for permanent partial disability, payments of said last named compensation to begin as of November 1st, 1926, subject to a credit for such amount as may have been paid on account of the previous order passed in this case, and subject to a credit for wages earned during temporary total disability."

The appellants appealed from this order to the Circuit Court for Harford County. The case was heard by that court, without issues, and the trial resulted in the court affirming the award of the Industrial Accident Commission, with the exception that it extended the time from fifty to one hundred weeks for which the claimant was to be paid $16.67 weekly for permanent partial disability.

During the progress of the trial, seven exceptions were taken to the action of the court in its rulings upon evidence; and, at the conclusion of the evidence, the claimant asked for one prayer, which was granted. The employer and insurer asked for five prayers, all of which were rejected.

The court, by appellants' first prayer, was asked to rule, as a matter of law, that the claimant was not entitled, upon the facts of the case, to recover compensation for permanent partial disability. This was asked upon the assumption that there was no legally sufficient evidence tending to show that the claimant suffered such disability as the result of the injury. Whether he suffered permanent partial disability was the question before the Industrial Accident Commission at its hearing on the 29th day of December, 1926, and it reached the conclusion, upon the evidence offered, that the claimant had suffered a permanent partial disability, and was entitled to compensation for such disability.

The evidence before the commission showed that, after the accident on September 19th, 1925, the claimant did not, because of the injury resulting from the accident, return to his work until the 6th day of October of the same year, and then, finding that he was not able to do the work on account of the injury received, he discontinued it. While in this condition, the claimant, at the suggestion of the employer and insurer, was, in June, 1926, examined by Doctors Hopkins and Steiner. In describing his condition, Dr. Hopkins said: "He had great pain, due to atrophy of the testicle and swelling of the cord, that seemed to be inflamed. Only the removal of the testicle and part of the cord would give him relief, which was done in June, 1926."

In October following, the claimant was again examined by Doctors Hopkins, Steiner and Lewis. Dr. Hopkins said that, at that time, he was able to return to his work. Whereupon he was asked by the claimant, "when you examined me last, with Dr. Steiner and Dr. Lewis, I was telling you about these pains I had, these short shooting pains? A. Yes. Q. You said it was from being operated on? A. Just the nerves. Q. And I told you right under the heart, I had a

catch in there, and I also mentioned to you about that. Do you think that a man is as good after the removal of a testicle?" Without waiting for a reply, the chairman of the commission asked, "Would it affect his ability to earn a livelihood industrially? A. I don't think so. Authorities differ on that question."

Dr. Steiner, who was with Dr. Hopkins at the operation, and who saw the claimant again in October following, was asked, "Are you able to say now, Doctor, whether or not Mr. Lilly is in any way incapacitated from performing the services that he was engaged in at the time of the accident, driving a truck?" He replied, saying, "My impression is that he is able—that he can do work now as well as before the accident." He was then asked whether the claimant was in October, 1925, able to return to his work as formerly before the accident. He said "Perhaps not at that time, he was still sore and tender there. Perhaps lifting and doing manual labor would have given him some discomfort. But I think that has all passed away." He was then asked whether or not the loss of the testicle would affect or impair his ability to perform physical or manual work, to which he replied, "Physically he would probably be able to do the same character of labor. Sometimes it affects the nervous system."

The claimant, when placed upon the stand, testified that he was not then and had not been able, since the accident, to return to the work he was doing, and when asked why he was not able to go back to work, he said, "Well, it's my nerves, my condition, that I am almost afraid to see the car. I can get in a car and drive a car slow, but ride with any one else, I cannot do it. I am afraid they are going to hit something. If I could return to work I would. I was on a commission, $25 a week and commission, and I could make 40 and 50 dollars a week, and I would not stay off for $16.67."

The three witnesses, Doctors Hopkins and Steiner, and the claimant, were the only witnesses produced before the commission, and it will be seen, from the evidence intro-

duced, that the question before the commission was whether the claimant, because of the injury received by him, was incapacitated from performing the services he was engaged in at the time of the accident, and upon such evidence it held that he was so incapacitated and, because of such fact, it awarded him compensation for permanent partial disability. From this decision of the commission the employer and insurer appealed to the Circuit Court for Harford County.

Section 56 of article 101 of the Code, which authorizes appeals from decisions of the State Industrial Accident Commission, provides that "in all court proceedings, under or pursuant to this article, the decision of the commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same." Because of this provision of the statute, which makes the decision of the commission *prima facie* correct, and places the burden of proof upon the party attacking the decision, this court has held that, where the question involved in such decision, like the one in this case, is a mixed question of law and fact, it only becomes a question of law, for the court to decide, when the facts, upon which the decision of the court is rendered, have been ascertained and agreed upon by the parties; or when such facts are undisputed and there is no dispute as to the inferences to be drawn from them. *Harrison v. Central Construction Co.*, 135 Md. 170; *Todd v. Easton Furniture Co.*, 147 Md. 352; *Southern Can Co. v. Sachs*, 149 Md. 562.

Applying this rule of law to the present case, which was not submitted to the court upon any agreed statement of facts, or upon facts undisputed, but submitted upon the conflicting evidence of the parties, the court could not, as it was asked to do by the appellants' prayer, hold, as a matter of law, that the claimant·could not recover compensation for injury affecting his earning power, resulting, as the commission held, in·permanent partial disability.

The granted prayer of the claimant states the legal proposition that the court could, or had the power to, increase the amount of compensation allowed by the commission, and to

extend the time fixed by the commission for which it should be paid, if, in the opinion of the court, the amount allowed and the time fixed were not sufficient under the facts and circumstances of the case. This legal proposition is not, it seems, controverted by the appellants, but they oppose the granting of the prayer, because, as contended by them, their first prayer, in the nature of a demurrer to the evidence, should have been granted.

By the appellants' second, third, fourth, and fifth prayers, the court was asked to rule, as a matter of law, that the injured employee was not entitled, under the facts of the case, to recover; "First, compensation for mutilation or disfigurement; second, compensation for temporary total disability; third, compensation for temporary total disability * * * and in addition thereto, compensation for mutilation or disfigurement; fourth, compensation for temporary total disability * * * and in addition compensation for permanent partial disability."

The question raised by the first three of this group of prayers, being appellants' second, third, and fourth prayers, do not seem to have been involved in the trial of the case, but if so, we discover no reversible error in the court's refusal to grant them.

By the appellants' fifth prayer, the court was asked to rule that, as a matter of law, the claimant was not entitled to receive compensation for temporary total disability, and, in addition thereto, compensation for permanent partial disability.

We do not understand it to be the contention of the appellants, though the wording of this prayer would so indicate, that an injured party could not properly be allowed compensation for permanent partial disability, in addition to temporary total disability, but, as stated in their brief, the question raised, or intended to be raised, by the prayer under consideration, was whether the compensation awarded the claimant for permanent partial disability, was to run "concurrently with the award for temporary disability" or "consecutively thereto."

The first order of the commission, passed on the 3rd day of November, 1925, after rehearing, at the instance of the employer and insurer, on the 29th day of December, 1926, was rescinded and annulled by the order of the commission passed on the 31st day of December, 1926, and in lieu thereof, the commission, by its order of December 31st, 1926, awarded compensation, at the rate of $16.67 weekly, for temporary total disability, to commence on the 25th day of September, 1925, the date at which the payments under the first order commenced, and to end on the 31st day of October, 1926. In addition thereto, the claimant was awarded by the commission a like compensation for permanent partial disability, for the period of fifty weeks, to commence on the 1st day of November, 1926, when the compensation for temporary total disability ceased, "subject to a credit for such amount as may have been paid on account of the previous order passed in this case, and subject to a credit for wages earned during temporary total disability." The effect of this order was to allow the claimant compensation at the rate of $16.67 per week for temporary total disability from the 25th day of September, 1925, to the 31st day of October, 1926, compensation at the same rate, for permanent partial disability, for the period of fifty weeks, beginning November 1st, 1926.

If we correctly understand the contention of the appellants, it is that the period for which the claimant was to receive compensation for permanent partial disability, under the order, should have started with the commencement and not at the end of the period for which compensation for temporary total disability was to be paid, and run concurrently therewith; although we do not understand them to contend that anything should have been paid him during that period, as compensation for permanent partial disability.

Subsection 3 of section 36, of article 101 of the Code, after stating the time for which compensation for permanent partial disability shall be paid for injury or losses therein specifically named, provides that "compensation for the foregoing specific injuries shall be paid in addition to and con-

secutively with the compensation (temporary total disability) hereinbefore provided in subsection 2 of this section." The section then deals with other injuries and losses not specifically named, not stating the time, of course, for which compensation shall be allowed therefor, except to say that the time shall not be longer than one hundred weeks, and, that in fixing the time, due regard must be had "to the character of the mutilation and disfigurement, as compared with mutilation and injury hereinbefore specifically provided." Nothing more is said in that section, or elsewhere in the statute, as to the time or manner of payment of compensation, it not saying whether it should run concurrently with the compensation awarded for temporary total disability or consecutively thereto.

The appellants contend that, as this provision of the section precedes the mention and discussion of other injuries or losses generally referred to in said section, but not specifically named, and as it refers especially to the "aforegoing specific injuries," the commission, in the exercise of its power conferred upon it by the act, cannot, except in cases where such specifically named injuries or losses are involved, award compensation for permanent partial disability, in addition to temporary total disability, the former to run consecutively with the latter.

This is not, we think, the proper construction of this section of the act. This section of the statute, which names the time for which the injured employee shall be paid for each of the specifically named injuries or losses, requires, in those cases, that compensation for permanent partial disability shall be paid consecutively to the compensation for temporary total disability. It is there dealing with known injuries and losses, and the commission is required to do as therein directed. The commission is given authority by the statute to award compensation for temporary total disability, and in addition thereto, permanent partial disability, and it has, we think, as incident to such authority, the power to determine how such compensation shall be paid, without any further specific authority. The effect of this provision of the statute is not,

we think, to deprive the commission of that authority or power where the injury or loss is not one of those specifically named, but to require the commission, in cases where the specifically named injuries and losses are involved, to pay the compensation in the manner there stated.

The first, second, third, fourth, fifth, and sixth exceptions were to the admission of evidence as to the effect of the removal of the testicle upon the physical condition and procreative powers of the claimant. We do not feel warranted in holding that this evidence was inadmissible in the light of the evidence of the doctors, as to the effect of the removal of a testicle at times upon the nervous system. This evidence showing the probable or actual effect of its removal on the claimant, in a measure, at least, support the statement of the claimant that because of the operation, necessitated by the injury, he has suffered and is still suffering greatly with nervousness, which it appears, prevents him from returning to his work.

The seventh exception is to the refusal of the court to permit Dr. Hopkins to answer a question propounded to him by the appellants' counsel. With the evidence already introduced, he probably should have been permitted to have answered the question, but nevertheless we do not regard the court's action thereon as a reversible error.

As we have found no reversible errors in the rulings of the court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs*