HOWARD CONTRACTING COMPANY, ET AL. *v.*
RUTH YEAGER

[No. 26, January Term, 1945.]

504

*Decided March 2, 1945.*

The causes were argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Paul M. Higinbothom* and *Robert E. Coughlan* for the appellants.

*Maurice J. Pressman,* with whom was *Joel J. Hochman* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This case involves the interpretation and the administration of the Workmen's Compensation Act. Appellee was the widow of an employee of the appellant, Howard Contracting Company. The other appellant is the insurer of the company. On October 6, 1942, appellee was awarded compensation of $12 a week for 416 weeks, not to exceed $4,992. On October 13, 1942, appellee's attorneys filed a petition with the State Industrial Accident Commission, to which appellee assented, asking for the allowance of a fee of $1,000. The Commission ordered

that this fee be allowed in a lump sum, to be paid out of and deducted from a commutation of the last 102 weeks of the compensation period. Accordingly, this fee was paid, leaving appellee 314 weeks to be paid her. On February 22, 1944, appellee remarried. Thereupon, appellants asked and obtained a hearing from the Commission on the issue whether appellee was entitled to further compensation, following her remarriage. On June 26, 1944 the Commission made a supplemental award, directing that payment under the original award cease as of February 21, 1944, and ordering the appellants to pay appellee compensation at the rate of $12 a week, not to exceed 52 weeks, under the provisions of Flack's Annotated Code, 1939, Article 101, Sec. 55. On July 21, 1944, the Commission denied appellant's petition to reopen the case. Appeals were taken to the Baltimore City Court from the orders of June 26, 1944, and July 21, 1944, although the last order was not appealable. The cases were submitted on an agreed statement of facts to the Court, sitting without a jury. The Court answered the issue in the affirmative, affirmed the action of the Commission, and gave judgment in favor of the appellee for costs. Appeals were taken here.

Section 63 of Article 101 of Flack's Annotated Code gives the Commission authority, in all cases of compensation to an employee or dependent, excepting for temporary disability, to convert the compensation to be paid to a partial or total lump sum.

Section 55 of Article 101 provides, in case of the remarriage of a dependent widow of a deceased employee, without dependent children, that she shall receive compensation for one year after the date of her remarriage, *provided there is so much of the compensation previously awarded her outstanding.* (Italics supplied.)

In the case before us, at the time of her remarriage, the widow had received approximately $1,044 for herself under the original award, and had received $1,000 for her attorney's fee, making a total received of $2,044. There was, therefore, outstanding of the amount pre-

viously awarded her, $2,948 which would have been payable to her in weekly installments.

Appellants claim that the payments directed by Section 55 have already been made by the commutation of the last 102 weeks, and that if they have to pay 52 more weeks, this will add $624 to the amount they should have to pay. Appellee contends that the commutation order was appealable, was not appealed, is now *res judicata*, and that, by the widow's remarriage, appellants have saved the difference between $2,948 and $624 or $2,324.

Each of these contentions can be mathematically demonstrated, but which is correct depends upon the proper interpretation of the Workmen's Compensation Act.

Appellants cite cases from other jurisdictions which, they contend, sustain their argument, but these cases are distinguishable. In the case of *Di Donato v. Rosenberg*, 263 N. Y. 486, 189 N. E. 560, an award was made to a widow and children upon the occasion of the death of the husband and the father. The future installments of the widow's compensation were commuted to one lump sum. She died during the compensation period, and the New York Commission increased the compensation to be paid to the children. This increase compelled the employer to pay death benefits in excess of a statutory maximum of 66⅔ per centum of the average wages of the deceased. The Court said the Commission could not stretch the compensation beyond the limitations established by the Legislature. In the case before us, we have no such situation.

Again in the case of *Carlin v. Lockport Paper Company*, 214 App. Div. 354, 212 N. Y. S. 65, a widow on remarriage was given a two-year's lump sum award called for by the New York statute, and the children were also given an increase. The effect of the widow's remarriage award and the increase of the benefits to the children was to make the total death payments more than 66⅔ per centum of the average wages of the deceased. The Court said that was prohibited by the statute.

In the case of *Ritter Lumber Co. v. Begley*, 288 Ky. 481, 156 S. W. 2d 501, a widow was awarded compen-

sation by the Kentucky Commission, and a number of the final payments were commuted into a lump sum to pay a fee to her counsel. There was some claim made by other parties which interrupted the payment of the widow's compensation for about eight months. At the end of this period she remarried. She then tried to collect compensation for the eight months she was not paid. The Court held that the payments already made to the widow, and the lump sum paid to her counsel, totaled more than the eight months which she had been denied, and therefore she had received all that was coming to her. There was in that case no definite legislative question of an allowance to a widow on remarriage. The question was simply whether the lump sum compensation paid to her attorney should be charged against the balance due her on the original award, and the Court held it should.

In the case of *Olson v. National Tea Co.*, 212 Minn. 215, 3 N. W. 2d 225, before the Supreme Court of Minnesota, a widow, having been allowed two lump-sum payments by commutation of the last of her regular weekly payments, then remarried. Her total compensation to which she would have been entitled, if alive and unmarried, was $7,500 in weekly payments. She had received in weekly payments $2,013.44 and lump-sum payments of $353.06 and $113.83, making in all, $2,480.33. The Minnesota statute provided that a widow on remarriage without dependent children should receive a lump sum settlement equal to one-half of the compensation remaining unpaid, but not to exceed two full year's compensation. The Commission awarded her two year's compensation at the rate she was receiving, which amounted to $1,101.76, and then deducted from this the previous two lump-sum payments, leaving a balance of $580.32 as the net award. She subsequently filed a claim for an additional award of the amount of the deduction. The Court held that the Commission had the power to adjust accounts between employer and employee, and, where a widow has been overpaid at the time of her remarriage, the amount due her may be adjusted by deducting the overpayment.

We do not feel that the Legislature has given our State Industrial Accident Commission power to make any such adjustments. The Legislature has stated in so many words what should be paid. If any previous lump sum payments are to be deducted from the remarrying widow's allowance, the Legislature, not the Commission, and not the Courts, must say so.

The provision of Section 63 of Article 101 authorizing the Commission to convert compensation, except for temporary disability, to be paid in partial or total lump sums, was in the original Workmen's Compensation Act passed by Chapter 800 of the Acts of 1914. See Section 50 of that act. It was before this Court in the case of *Victory Fireworks, etc., Co. v. Saxton,* 170 Md. 446, 185 A. 123, 125. In that case the Commission had commuted an award for permanent total disability to a lump sum after 302 weeks had been paid, allowance being made to the employer for the previous payments. The employer appealed. The lower Court granted a motion *ne recipiatur,* and dismissed the appeal. The case came here to review that action of the lower Court. This Court held that the action of the Commission was reviewable, and that the lower Court should have heard the case. The appellants claimed that the award could not be converted because of the possibility of partial or total recovery of the claimant during the compensation period, and because the claimant might die before the time when he would normally have received the maximum amount of the award. That contention was rejected here. This Court said that while the Legislature had guarded against the possible contingencies of both death or recovery from disability, and had provided for modification or change in the award, it was apparent that the legislative intention "was to empower the commission to convert all forms of compensation under its authority, to be paid in a partial or total lump sum, with the exception of compensation for temporary disability, if in its opinion the facts and circumstances of the case so warrant." The Court, speaking through Judge Mitchell, then made the following statement about the Workmen's Compensation Act:

"Compensation acts are unusual and summary in their nature, containing in their structure a correlative series of advantages and disadvantages; for each of which burden imposed upon one of the parties may be found a compensating concession yielded by the other. From this system of checks and balances, devised for the mutual interest of employer and employee, with its corresponding benefits and burdens, improved by successive legislative enactments, and clarified by judicial interpretations, has been evolved the present Workman's Compensation Law."

At the time the Victory Fireworks case was decided, in 1936, the provisions of Section 55 of Article 101, giving a widow one year's compensation after remarriage, had been enacted. The original act, Chapter 800 of the Acts of 1914, Section 42, provided: "In case of the remarriage of a dependent widow of a deceased employe without dependent children, all compensation under this Act shall cease." This provision was approved by this Court in the case of *Giggendelle v. Piedmont, etc., Coal Co.,* 137 Md. 25, 111 A. 135, decided in June, 1920. Whether the pendency of the last named case had anything to do with the change in the statute, we are not informed. It is at least significant that by Chapter 456 of the Acts of 1920, which went into effect June 1, 1920, the section relating to a remarried widow's compensation was changed to its present form. Instead of her compensation ceasing, she is now given compensation for one year after the date of her remarriage, provided there is so much of the compensation previously awarded her outstanding.

The provisions of the Workmen's Compensation Act must be construed together. Appellee's original allowance was not only $12 a week for 416 weeks. It was that, subject to various contingencies. It was subject to death, it was subject to remarriage, and it was subject to lump sum conversion, in whole or in part. Appellants' liability was subject to the same contingencies. The partial lump sum conversion could have been contested, before the commission, before the lower courts and before this

Court. It was allowed to become final without objection. There is no contention that it was obtained fraudulently or in any manner except in strict accord with the statute. Subsequently the appellee exercised her privilege of remarrying. In such a case, if she investigated her financial situation, she was entitled to believe, from the words of the statute that she would get a year's compensation. She had that much, and more, left of the original award. Appellants were not penalized by her remarriage. They had paid the conversion of the last 102 weeks without objection. That part of the award was settled. The remainder which appellants expected to have to pay was reduced by the marriage. They benefited by it, to that extent. They are not entitled to any deduction from the year's allowance unless the Act so states. It does not so state. It is definite and final.

In the recent case of *Paul v. Glidden Co.*, 184 Md. 114, 39 A. 2d 544, 546, we had before us the Construction of a section of the Workmen's Compensation Act, which if literally applied, it was claimed, would result in injustice to the employer. With respect to this contention, we said, speaking of the Workmen's Compensation Act: "There were, in its first enactment, certain inequalities which have, from time to time, been corrected by amendment. There may be need for further amendment. As to this, we express no opinion, as it is not within our province. Some of the present provisions may be inequitable. To consider this, is also outside of the scope of our duties. The enactment is made in pursuance of the police power (*Solvuca v. Ryan & Reilly Co.*, 131 Md. 265, 101 A. 710) and the details must be left to the judgment of the Legislature, unless some basic right is infringed."

We think this applies with equal, if not greater, force to the case before us. Had the Legislature intended to restrict the remarried widow's allowance, by directing that a commutation of the last payments, previously made and paid, should be deducted from it, it could have said so. It did not say so in 1920, and it has not said so

in the 25 years since. It did restrict that allowance by providing that it should only be paid if enough of the compensation previously awarded the widow was outstanding. Under this provision, if the whole of the award had been commuted, the widow could not get any part of the year's allowance upon remarriage. If so much of the award, previously made to her, had already been paid that there was not a full year's compensation outstanding, she could only receive what was outstanding. The employer was not made to pay any more than the original award compelled him to pay, but the only restriction on the remarried widow's allowance was that there must be enough of the original award outstanding to permit its payment. The fact that this was the only restriction is convincing proof that the Legislature did not intend any other. We cannot assume authority to read into the Act what the Legislature apparently deliberately left out. Judicial construction should only be resorted to when an ambiguity exists. Here, we find none.

Whether the act should be amended, and some different provision made for a case such as the one before us, is not for our determination. That is strictly within the purview of the legislative branch of the Government. Until, or unless, some change is made, we must assume that the Legislature did not intend to interfere with the power of the Commission to commute an award for permanent disability, either in whole or in part, and did not intend to complicate that power by consideration of a possible remarriage of a dependent widow.

There may be reasons of public policy why this has not been done. The Legislature of Maryland is not alone in giving a remarried dependent widow an allowance. Other states have done the same thing. The purpose behind such enactments is said to be the desire not to discourage marriage by making the widow give up all of her compensation when she takes another husband. The same reasoning might apply against compelling her to give up her year's allowance if she has already had a lump sum conversion of so much of her compensation. In the case ·

at bar, the conversion was to permit her to pay her counsel for their services in getting her the original award. It is the usual and sometimes the only method by which counsel can be paid. The dependent widow may be forced to resort to it in order to get representation. If she is thereby to be deprived of her year's allowance, in case she desires to remarry, the same condition will obtain as to her, as if no remarriage provision had been made. Her marriage will still be discouraged. These are considerations for the Legislature, and may be the reason why no change has been made in the statute. We do not desire to be understood as either approving or disapproving them. They are not our concern.

In view of the conclusions stated, the judgment of the lower Court will be affirmed.

> *Judgment affirmed with costs to the appellee.*

MARKELL, J., filed the following dissenting opinion.

The question in this case is, whether under the Workmen's Compensation Act a childless widow who before remarriage has received all compensation payable up to her remarriage, and also a lump sum payment of future compensation for 102 weeks, is entitled to receive additional compensation for 52 weeks. This question depends upon construction of provisions of sections 55 and 63 of the Act (Code, 1939, Art. 101), viz.:

"55. * * * In case of the remarriage of a dependent widow of a deceased employee, without dependent children *at the time of the remarriage, she shall receive compensation for one year after the date of her remarriage, provided there is so much of the compensation previously awarded her outstanding.* * * *"

"63. In every case providing for compensation to an employee or his dependent, excepting temporary disability, the Commission may, if in its opinion the facts and circumstances of the case warrant it, *convert* the compensation to be paid in a partial or total lump sum."

Instead of the words above italicized in Section 55, the original Act (1914, Ch. 800, Sec. 42) provided: "all compensation under this Act shall cease." The change was made by the Act of 1920 (Ch. 456, Sec. 43 [Code, Vol. 3, 1914]). By the same Act (Sec. 51) the word "convert" in Section 63 was substituted for "allow" (Act of 1914, Sec. 50). The Act of 1920 (Sec. 36) also inserted in Section 36 (now 48) provision that the right to compensation payable to a dependent and unpaid at his death shall survive to surviving dependents, "and if there be none such, then the compensation shall cease." The Act of 1920 was an extensive revision of the original Act. By it amendments were made to fifteen sections (including the three above mentioned), "so as to make certain changes in the manner of administering and the extent of the application of workmen's compensation, and to increase the amount of such compensation." The object and purpose of the original Act remains unchanged, viz., to provide compensation for workmen and dependents—once—not to provide husbands for widows or duplicate compensation for anybody.

It may be assumed that the amendment of 1920 relating to remarriage of widows, and similar amendments in other states, were made "to induce freedom of marriage" and that the original provision that all compensation should cease upon remarriage had created "practices that required relief." See *Garrity v. Bituco Mfg. & Chemical Co.*, 1923, 277 Pa. 88, 92, 120 A. 764, 766. The nature and extent of this amendment, however, depends upon the terms of the statute—Section 55.

The purpose and effect of the above quoted sentence in Section 55 is to *reduce* a childless widow's compensation in the event of remarriage. In the absence of any such provision, compensation is not terminated [a] by remarriage of a beneficiary, e. g., a sister (*Adleman v. Ocean Accident & Guarantee Corp., Ltd.*, 130 Md. 572, 101 A. 529, a childless widow (*case of Bott*, 230 Mass. 152, 119 N. E. 755; *Wangler, etc., Co. v. Industrial Comm.*, 287 Ill. 118, 120-123, 122 N. E. 366) or a widow

with children (*Walker v. Speeder Machinery Corp.*, 213 Iowa 1134, 1141, 240 N. W. 725), or [b] even by death (*State Accident Fund v. Jacobs' Adm'r*, 140 Md. 622, 118 A. 159). The Act of 1920, by amendment in Section 48 (then 36), terminated compensation upon death of a dependent leaving no other dependents surviving, but provided that the right to compensation should survive to surviving dependents instead of the estate of the deceased dependent. The compensation of a widow with dependent children is not reduced at all upon remarriage. The original Act terminated compensation of a childless widow upon remarriage; the Act of 1920 terminated it one year after remarriage.

The amendment of 1920 did not change the nature of a childless widow's compensation, but increased by one year (or less) the amount of her compensation in the contingency of remarriage. It did not authorize a new award of compensation to a remarried widow, but continued part of "the compensation previously awarded her." It did not discriminate between lump sum compensation and unconverted compensation for a widow, or between lump sum compensation for a childless widow and for other dependents.

Under sections 48, 55 and 56 compensation of workmen or dependents is subject to termination or reduction in certain contingencies of recovery, death, remarriage or non-residence. Commutation of future compensation involves risk of loss in such contingencies. For obvious reasons the law does not require, and does not contemplate, repayment by workmen or dependents of compensation received before the happening of the contingency. It would seem equally obvious that the law does not require, and does not contemplate, any duplication of compensation by payments after the contingency. Of necessity, the employer bears a risk of overpayment before the contingency. This is no reason why he should be subject to certain loss by any overpayment after the contingency.

Under Section 63, power to *convert* compensation into a lump sum is power to convert future compensation into

equivalent present compensation, not power to increase or duplicate compensation. If through death, marriage or other contingency the total amount received proves to be more than would otherwise have been received, this is an incidental result of the contingency, not a legitimate purpose of conversion into a lump sum.

In *Victory Fireworks & Specialty Co. v. Saxton,* 1936, 170 Md. 446, 450, 451, 185 A. 123, 125, the employer contended that an award for permanent total disability *cannot* be converted into a lump sum because of the possibilities of (a) recovery or (b) death of the claimant; that a conversion may result in payment to a claimant of the equivalent of a greater sum than he otherwise would have received; and that the commission's order did not indicate "that it considered the claimant's probable life expectancy, or possible partial or total recovery." Referring to these contentions, this court said that there was no testimony "tending to show either partial or total recovery," and that "it is but fair to assume, in the absence of proof to the contrary, that the commission considered his [claimant's] life expectancy in making its lump-sum award." It was held that an order converting compensation for total disability into a lump sum is within the commission's power under Section 63 (then 51), but is appealable on the law and the facts.

Neither Section 55 nor Section 63 authorizes duplication of compensation to a widow after remarriage. Section 55 provides for reduction of compensation, Section 63 for conversion, neither for duplication. The total amount of compensation to which a childless widow is entitled in the contingency of remarriage is usually less, never more, than in the opposite contingency. If at remarriage she already has received more than the total amount to which she is entitled in that contingency, payments to her must cease. An anticipated future naturally is a curtailed future.

The commission's orders of October, 1942, awarding [1] compensation to the widow and [2] a fee in a lump sum to her counsel, were necessarily subject to appli-

cable provisions of law, including curtailment of the compensation period in the event of remarriage. The compensation period under the order was, therefore, 416 weeks, subject to curtailment in the event of remarriage. The lump sum payment of "the last 102 weeks of the compensation period" was to be deducted from "the end of the compensation period." Section 63 authorizes conversion of "compensation to be paid," not of contingent compensation which never is to be paid. Upon remarriage of the widow the compensation period was curtailed to "one year after the date of her remarriage." This one year became "the end of the compensation period" and part of "the last 102 weeks." Compensation for this last year had already been paid in full. To this effect, see *Olson v. National Tea Company*, 1942, 212 Minn. 215, 217, 218, 3 N. W. 2d 225.

Many states provide for lump sum commutation payments and for termination or reduction of a widow's compensation upon remarriage. The trial court in its opinion, and the appellee in this court, relied on early Pennsylvania Superior Court cases which held that lump-sum payments of future compensation could not be deducted from the reduced compensation of a beneficiary [a] upon becoming a non-resident alien, *Lubanski v. Delaware, L. & W. R. R. Co.*, 1923, 81 Pa. Super. 538, 541, 542, or [b] upon remarriage. *DiLorenzo v. Carnegie Steel Co.*, 1927, 91 Pa. Super. 64, 69; *Hall v. Jones & Laughlin Steel Co.*, 1922, 79 Pa. Super. 303, 305-307. These cases were not based on statutory provision for remarriage of a widow and were not limited in application to remarriage or to widows. In Maryland they would be no less applicable to duplication of compensation for a non-resident alien under Section 48 or 56 than for a remarried widow under Section 55. They were based on reasoning, concerning lump-sum payments, not consistent with this Court's view of Section 63 (*Victory Fireworks & Specialty Co. v. Saxton*, supra), or with reasoning of the Pennsylvania Supreme Court or the Superior Court in later cases. These early cases viewed broadly the right to receive

lump-sum payments and narrowly the duty of the administrative board in the matter. The statute authorized the board to commute an award into a lump sum, "disregarding the probability of the beneficiary's death." These cases in effect required disregard of probability of remarriage or of becoming a non-resident alien. But the Pennsylvania Supreme Court later held that probability of remarriage should not be disregarded. *Garrity v. Bituco Mfg. & Chemical Co.*, supra. And the Superior Court, holding that lump sum payments to an injured employee must be deducted from the remaining compensation payable upon his death to his dependents, said that the opposite construction "would require the employer to pay double compensation—a result which we should not countenance, unless plainly compelled by the express language of the statute." *Shaftic v. Commonwealth Coal & Coke Co.*, 1932, 106 Pa. Super. 406, 414, 161 A. 773, 775. Finally in 1939 the statute authorizing commutation into lump-sum payments was virtually repealed by amendments omitting the provision for "disregarding the probability of the beneficiary's death" and providing that unless the employer agrees to make commutation, the board shall require the employee or the dependents to furnish indemnity "safeguarding the employer's rights."

No authority is cited for this court's conclusion in the instant case. On the other hand, recent cases in Minnesota and Kentucky hold that lump-sum payments must be deducted from reduced compensation of a widow upon remarriage (*Olson v. National Tea Co.*, supra), or from still unpaid compensation before remarriage. *W. M. Ritter Lumber Co. v. Begley*, 1941, 288 Ky. 481, 484, 156 S. W. 2d 501. In the Kentucky case, as in the instant case, the lump sum in question had been paid as a counsel fee. In Kentucky a widow's compensation ceases upon remarriage; in Minnesota it is reduced to a "lump-sum settlement" equal to one-half of the amount still unpaid (not to exceed two full years' compensation). In New York, in applying a statutory maximum of 66⅔ per cent. for compensation for all dependents, after the death of

a widow who had received a lump-sum commutation of future compensation her commuted compensation must be included in the total, as if she were still living and her compensation were being currently paid. *Di Donato v. Rosenberg,* 1934, 263 N. Y. 486, 189 N. E. 560.

The reasoning and the results in the cases last cited are in harmony with the Maryland statute and decisions. In *Olson v. National Tea Co.,* supra, the widow, before remarriage, had received two lump-sum payments, representing "the last 71 weeks" compensation. The Court, holding that these lump-sum *payments* must be deducted from her lump-sum *settlement* of 104⅓ weeks compensation upon remarriage, said:

"The widow's remarriage did not change the rights of the parties. It merely eliminated the contingency as to what compensation she should receive, because thereby she became entitled only to the lump-sum settlement. Likewise, as a necessary incident, it definitely determined what particular payments the lump-sum payments represented. The lump-sum *settlement* represented the *'last'* 104⅓ weeks' compensation to which she was entitled. The lump-sum *payments* therefore were properly deductible therefrom. The commission has the power to adjust the accounts between employer and employe for compensation payments. Where a widow has been overpaid at the time of her remarriage, the amount due her may be adjusted by deducting the overpayment. *Miller v. Tate Tile & Silo Co.,* 168 Minn. 512, 209 N. W. 630; see *Stegner v. City of St. Paul,* 189 Minn. 290, 249 N. W. 189. Likewise, she may be charged with payments received in determining the amount actually due to her. Of course no such deduction could be made of an ordinary debt. *Gregg v. New Careyville Coal Co.,* 161 Tenn. 350, 31 S. W. 2d 693." 212 Minn. 218, 3 N. W. 2d 226.

"Power to adjust" accounts between employer and employee or beneficiary is nothing more than power to make the arithmetical computations required in any determination as to compensation. See, e. g. *Coca Cola Bottling Works v. Lilly,* 154 Md. 239, 241, 140 A. 215. Such gen-

eral power is implied in the specific provisions in Section 55, [1] that in case of a second accident future compensation "shall be adjusted according to the other provisions of this Article," and [2] that in case of aggravation, diminution or termination of disability the commission may *"readjust* for future application the rate of compensation."

This court has recognized the tendency to give to workmen's compensation acts "an interpretation as broad and liberal in favor of the employee as their provisions will permit, in furtherance of the humane purpose which prompted their enactment." *Reisinger-Siehler Co. v. Perry,* 165 Md. 191, 199, 167 A. 51, 54. But it has also observed that "the benevolent purpose of the act would not warrant a judicial extension of it beyond the limits it prescribes." *Robertson v. North American Refractories Co.,* 169 Md. 187, 189, 181 A. 223, 224.

The commission has broad power, "if in its opinion the facts and circumstances of the case warrant it," to convert compensation into a lump sum. The policy of such legislation is that periodic compensation should be the rule, lump-sum payments the exception. Frequent lump-sum payments, especially for substantial counsel fees, are recognized as an evil to be avoided. See Payment of Attorney's Fees by Lump-Sum Award under Workmen's Compensation Acts [1939], 25 Washington University Law Quarterly 107; Report to Governor O'Conor of Committee Appointed to Survey the State Industrial Accident Commission, July 8, 1940. The Supreme Court of Pennsylvania has said: "Commutation is the exception to the rule, for the reason that lump-sum payments are often quickly dissipated and do not afford the regular relief so necessary to the widow and orphans." *Lovasz v. Carnegie Steel Co.,* 266 Pa. 84, 85, 109 A. 601; *Garrity v. Bituco Mfg. & Chemical Co.,* supra, 277 P. 92, 120 A. 765. Duplication of lump-sum payments is not within either the purpose or the provisions of the Act.

I think the judgment should be reversed.

Judges DELAPLAINE and GRASON authorize me to say that they concur in this opinion.