874 A.2d 439

Ernest A. JOHNSON

v.

MAYOR AND CITY COUNCIL OF BALTIMORE CITY.

Daniel T. Luster, Jr.

v.

Mayor and City Council of Baltimore City.

Nos. 60, 77, Sept. Term 2004.

Court of Appeals of Maryland.

May 12, 2005.

Paul D. Bekman (Gregory G. Hopper, Salsbury, Clements, Bekman, Marder & Adkins, LLC, on brief), Baltimore, for petitioner.

William R. Phelan, Jr., Principal Counsel, Herbert Burgunder, Jr., Special Principal Counsel (Ralph S. Tyler, City Solicitor, on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

GREENE, J.

The Legislature is often faced with balancing opposing interests and making difficult choices. This case discusses some of the lines drawn by the Legislature distinguishing

workers' compensation benefits for firefighters as different than for their dependents. We are asked to decide the availability of dual benefits for dependents of firefighters who die from particular occupational diseases. That issue has been addressed and decided by the Legislature.

Both Ernest Johnson (Mr. Johnson) and Daniel Luster (Mr. Luster) were Baltimore City Firefighters who died of cancers that were caused by their repeated contact with toxic substances in the line of duty. The cancer prevented both men from performing their duties as firefighters. Both Mr. Johnson and Mr. Luster are survived by their wives and both women receive benefits from their husbands service pension plans.

The issue before this Court is whether the widows may collect the service pension benefits in addition to the full workers' compensation death benefits, or whether the workers' compensation death benefits must be reduced by the amount of service pension benefits the widows are currently receiving.

We hold that the statute does not permit the dependents to collect full workers' compensation death benefits in addition to service pension benefits.

## FACTS

The facts in both of these cases are undisputed. Consequently, our recitation of the facts is succinct. Mr. Johnson worked for thirty-two years as a Baltimore City firefighter. As a result of his repeated contact with toxic substances encountered in the line of duty, he contracted colon cancer and became unable to perform his duties as a firefighter. Mr. Johnson's average weekly wage as a firefighter was $989.75. On March 11, 1994, Mr. Johnson died from colon cancer.[1]

---

1. The parties agree that Mr. Johnson's colon cancer is a "rectal cancer" and is an occupational disease that was suffered in the line of duty, within the meaning of § 9–503(c)(1) of the Labor and Employment

**4**

Mrs. Johnson was wholly dependent on her husband at the time of his death. She currently receives $603.90 per week in benefits from Mr. Johnson's service pension plan.

Mr. Luster was also a Baltimore City firefighter who contracted cancer as a result of his repeated contacts with toxic substances encountered in the line of duty. Because of the cancer, Mr. Luster was unable to perform his duties as a firefighter and ultimately died from pancreatic cancer[2] on August 8, 2000. Mr. Luster's average weekly wage as a firefighter was $821.52. Mrs. Luster was wholly dependent on her husband at the time of his death. She currently receives $294.83 per week in benefits from Mr. Luster's service pension plan.

Both Mrs. Johnson and Mrs. Luster filed workers' compensation claims for death benefits, which were heard by the Workers' Compensation Commission, the Circuit Court for Baltimore City, and the Court of Special Appeals. The Commission and the Circuit Court agreed in both cases that the widows were eligible for benefits and that they were permitted to receive a combination of workers' compensation and retirement benefits. In both cases, the Circuit Court granted motions for summary judgment filed by the claimants and denied motions for summary judgment filed by the City. As a result of these rulings, the City appealed in both cases to the Court of Special Appeals.

In a reported opinion, the Court of Special Appeals held that Mrs. Johnson was eligible for benefits, but that her workers' compensation death benefits must be reduced by the amount of service pension benefits that she received.[3] *Mayor*

---

article. Md.Code (1991, 1999 Repl.Vol.), § 9–503(c)(1) of the Labor and Employment Article.

2. Pancreatic cancer is also an occupational disease that was suffered in the line of duty, within the meaning of § 9–503(c)(1) of the Labor and Employment Article. Md.Code (1991, 1999 Repl.Vol.), § 9–503(c)(1) of the Labor and Employment Article.

3. Mrs. Johnson is eligible to receive workers' compensation death benefits in the amount of $510.00 per week. Because she receives

*& City Council of Baltimore City v. Johnson,* 156 Md.App. 569, 596, 847 A.2d 1190 (2004). Mrs. Johnson filed a Petition for *Certiorari,* which we granted. *Johnson v. Baltimore,* 382 Md. 687, 856 A.2d 723 (2004).

Similarly, in an unreported opinion, the Court of Special Appeals held that Mrs. Luster was eligible for workers' compensation death benefits, but that they must be reduced by the amount of service pension benefits that she received.[4] We also granted *certiorari* in that case. *Luster v. Baltimore,* 383 Md. 214, 857 A.2d 1131 (2004). Because the issue before the Court in these cases is identical, we shall decide the cases together and report our decision in one opinion.

## STANDARD OF REVIEW

Under Md. Rule 2–501(e), summary judgment may be granted if "the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." We review the grant of summary judgment *de novo. Walk v. Hartford Cas. Ins. Co.,* 382 Md. 1, 14, 852 A.2d 98, 105 (2004). Whether the Circuit Court properly granted summary judgment is a question of law. *Id.* Therefore, we must decide if the trial court's decision was legally correct. *Id.*

In this case, we are called upon to interpret a statute. The question before us is purely a legal one. *See Salamon v. Progressive Classic Insurance Company,* 379 Md. 301, 307, 841 A.2d 858, 862 (2004) (noting that the only issue presented

---

service pension benefits in the amount of $603.90 per week, once the workers' compensation benefits are off-set, Mrs. Johnson receives no workers' compensation death benefits. She does, however, continue to receive the service pension benefits of $603.90 per week.

4. Mrs. Luster is eligible to receive workers' compensation death benefits in the amount of $510.00 per week. Offsetting that amount by the amount she receives in service pension benefits, results in a payment of $215.17 per week in workers' compensation death benefits. She also continues to receive $294.83 per week in service pension benefits.

in that case was a question of law involving statutory interpretation); *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78, 80–81 (2004) (stating that "[b]ecause our interpretation of ... provisions of the Maryland Code ... are appropriately classified as questions of law, we review the issues *de novo* to determine if the trial court was legally correct in its rulings on these matters.").

## DISCUSSION

Section 9–502 of the Labor and Employment Article requires employers and insurers to compensate covered employees and their dependents for disability or death that results from an occupational disease.[5] This section also limits the liability of employers and insurers by requiring the occupational disease to meet certain requirements in order to be compensable. The section provides in pertinent part:

(a) *"Disablement" defined.*—In this section, "disablement" means the event of a covered employee becoming partially or totally incapacitated:

(1) because of an occupational disease; and

(2) from performing the work of the covered employee in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease.

\* \* \*

(c) *Liability of employer and insurer.*—Subject to subsection (d) of this section and except as otherwise provided, an employer and insurer to whom this subsection applies shall provide compensation in accordance with this title to:

---

5. We have previously defined "occupational disease" as " 'one which arises from causes incident to the profession or labor of the party's occupation or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant.' " *Polomski v. Mayor & City Council of Baltimore*, 344 Md. 70, 78 n. 8, 684 A.2d 1338, 1341 n. 8 (1996) (quoting *Victory Sparkler & Specialty Co. v. Francks*, 147 Md. 368, 379, 128 A. 635, 638 (1925)).

(1) a covered employee of the employer for disability of the covered employee resulting from an occupational disease; or

(2) the dependents of the covered employee for death of the covered employee resulting from an occupational disease.

(d) *Limitation on liability.*—An employer and insurer are liable to provide compensation under subsection (c) of this section only if:

(1) the occupational disease that caused the death or disability:

(I) is due to the nature of an employment in which hazards of the occupational disease exist and the covered employee was employed before the date of disablement; or

(ii) has manifestations that are consistent with those known to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment in which the covered employee was employed before the date of disablement; and

(2) on the weight of the evidence, it reasonably may be concluded that the occupational disease was incurred as a result of the employment of the covered employee....

Md.Code (1991, 1999 Repl.Vol.), § 9–502 of the Labor and Employment Article.

Section 9–503 of the Labor and Employment Article carves out an exception to the general occupational disease provisions noted in § 9–502 by giving special treatment to employees in particular professions who are suffering from particular diseases. Section 9–503 affords those employees the benefit of a presumption that their condition is a compensable occupational disease.[6] It also permits those employees

---

6. The burden of production and persuasion remain on the employer. "Although the presumption of compensability is a rebuttable one of fact, the legislature manifestly intended that the statute impose a formidable burden on the party against whom it operates. *Montgomery*

to collect workers' compensation benefits in addition to retirement benefits, up to the amount of the employee's weekly salary.[7] Section 9–503 © states in pertinent part:

A paid firefighter ... is presumed to be suffering from an occupational disease that was suffered in the line of duty and is compensable under this title if the individual:

(1) has leukemia or pancreatic, prostate, rectal, or throat cancer that is caused by contact with a toxic substance that the individual has encountered in the line of duty;

(2) has completed at least 5 years of service as a firefighter ... in the department where the individual currently is employed or serves;

(3) is unable to perform the normal duties of a firefighter ... in the department where the individual currently is employed or serves because of the cancer or leukemia disability. . . .

Md.Code (1991, 1999 Repl.Vol., 2004 Supp.) § 9–503(c) of the Labor and Employment Article. Section 9–503(e) provides in pertinent part:

(1) Except as provided in paragraph (2) of this subsection, any paid firefighter ... who is eligible for benefits under subsection (a), (b), (c), or (d) of this section shall receive the benefits in addition to any benefits that the individual is entitle to receive under the retirement system in which the individual was a participant at the time of the claim.

(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement

_County Fire Board v. Fisher_, 298 Md. 245, 257, 468 A.2d 625, 631 (1983).

**7.** By Contrast, § 9–610 of the Labor & Employment Article, which will be discussed later in the opinion, states the general rule that employees and their dependents do not receive both workers' compensation benefits and disability retirement benefits, unless the employee is owed more money in workers' compensation benefits than he or she is currently receiving in disability retirement benefits. In that case, the employee is entitled to receive the difference. _See Blevins v. Baltimore County_, 352 Md. 620, 724 A.2d 22 (1999).

benefits does not exceed the weekly salary that was paid to the ... firefighter....

Md.Code (1991, 1999 Repl.Vol., 2004 Supp.) § 9–503(e) of the Labor and Employment Article.

There is no dispute in either of the cases at bar regarding whether the firefighters themselves would have been permitted to collect workers' compensation benefits and retirement benefits simultaneously. Section 9–503(e) clearly permits firefighters suffering from particular occupational diseases to receive both benefits, as long as those benefits do not exceed the weekly wage paid to the firefighters. *See Polomski v. Mayor & City Council of Baltimore,* 344 Md. 70, 84, 684 A.2d 1338, 1345 (1996) (holding that § 9–503 required the firefighter's workers' compensation benefits to be reduced "to the extent that, when combined with his retirement benefits, the sum does not exceed his weekly salary."). The parties do not agree, however, that the dependents of the firefighters are also entitled to collect dual benefits, after the death of the firefighters who have succumbed to one of the occupational diseases described in § 9–503.

We note that § 9–503(e) makes no mention of dependents. Rather, the language reads as if it only pertains to the individuals mentioned in the statute; namely, firefighters (and other public safety personnel) who are eligible for benefits because they suffer from particular occupational diseases. Those individuals shall receive the workers' compensation benefits "in addition to any benefits that the *individual* is entitled to receive under the retirement system in which the individual was a participant at the time of the claim." Md. Code (1991, 1999 Repl.Vol., 2004 Supp.) § 9–503(e)(1) of the Labor and Employment Article. By contrast, § 9–610 of the Labor & Employment Article specifically mentions dependents and discusses the usual offset of workers' compensation benefits that applies to covered governmental employees and their dependents. It states, in pertinent part:

(a) Covered employee of governmental unit or quasi-public corporation.—

(1) Except for benefits subject to an offset under § 29–118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit ... or, in case of death, to the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title.

(2) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer, the Subsequent Injury Fund, or both shall provide an additional benefit that equals the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title. . . .

Md.Code (1991, 1999 Repl.Vol.) § 9–610(a) of the Labor and Employment Article. In *Blevins v. Baltimore County*, 352 Md. 620, 724 A.2d 22 (1999), while discussing the predecessor to this section, we noted that " 'the scheme that unmistakably emerges is that the General Assembly wished to provide *only a single recovery for a single injury* for governmental employees covered by both a pension plan and workmen's compensation.' " *Blevins*, 352 Md. at 639, 724 A.2d at 31 (quoting *Frank v. Baltimore County*, 284 Md. 655, 659, 399 A.2d 250, 253 (1979)). We also noted that the Legislature's intention in passing this set-off provision was to " 'minimize the burden on the public treasury that would result from providing *duplicate benefits* to public employees.' " *Blevins*, 352 Md. at 640, 724 A.2d at 31 (quoting *Frank*, 284 Md. at 661, 399 A.2d at 254).

[3] The City argues that because § 9–503 does not include dependents as eligible for dual benefits, the general offset provision of § 9–610 applies to Mrs. Johnson and Mrs. Luster, as dependents of covered governmental employees. As a result, the City asserts, their workers' compensation death benefits should be reduced by the amount of service pension benefits they are receiving. Mrs. Johnson and Mrs. Luster, however, argue that the offset provision in § 9–610 does not

apply to them. Rather, they contend that they are included under the more favorable provision in § 9–503 because their husbands were eligible for those dual benefits when they were alive.

Clearly, Mrs. Johnson and Mrs. Luster would have a much easier claim if the statute provided that the "individual *and his or her dependents*" are entitled to collect dual benefits. They assert, however, that even though dependents are not mentioned in § 9–503(e), the statute does not explicitly exclude dependents from dual benefits and, when considered within the context of the rest of § 9–503 and the purpose of workers' compensation laws, dependents should not be excluded.

 We remind ourselves that the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature. *O'Connor v. Baltimore County,* 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004). As noted by this Court in *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995):

> The first step in determining legislative intent is to look at the statutory language and "[i]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones, supra,* 336 Md. at 261, 647 A.2d 1204. *See also Parrison, supra,* 335 Md. at 559, 644 A.2d 537; *Rose, supra,* 335 Md. at 359, 643 A.2d 906; *Outmezguine v. State,* 335 Md. 20, 41, 641 A.2d 870 (1994).

*See also Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 422 (1997) (noting that our goal is to give statutes their "most reasonable interpretation, in accord with logic and common sense, and to avoid a construction not otherwise evident by the words actually used").

 A review of the context of all of § 9–503 and the general statutory purpose will assist us in determining the Legislature's intent and our construction of § 9–503(e). *See Frost v. State,* 336 Md. 125, 137–38, 647 A.2d 106, 112 (1994) (noting that we seek to avoid interpretations that are "illogical,

unreasonable, or inconsistent with common sense," and that the commonsensical approach to interpreting statutes includes a review of the general statutory scheme in which the statute in question is found); *Forbes v. Harleysville Mutual*, 322 Md. 689, 696–97, 589 A.2d 944, 947–48 (1991) (stating that we do not read statutory language "in isolation or out of context [but construe it] in light of the legislature's general purpose and in the context of the statute as a whole."). As stated in *Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 516, 525 A.2d 628, 633 (1987), when determining the context of a statute,

> legislative purpose is critical, that purpose must be discerned in light of context, and that "statutes are to be construed reasonably with reference to the purpose to be accomplished. . . ." The purpose, in short, determined in light of the statute's context, is the key. And that purpose becomes the context within which we apply the plain-meaning rule.

(Quoting *Potter v. Bethesda Fire Dept.*, 309 Md. 347, 353, 524 A.2d 61, 64 (1987).) In addition, context may include related statutes, pertinent legislative history and "other material that fairly bears on the . . . fundamental issue of legislative purpose or goal. . . ." *Kaczorowski*, 309 Md. at 515, 525 A.2d at 632 (1987).

With regard to the history and general purpose of the Workers' Compensation Act, this Court has explained:

> By Chapter 800 of the Acts of 1914, the Maryland Workers' Compensation Act was enacted into law in this State. Since that time, the Act has gone through several revisions, reflecting both changes in societal attitudes, workplace realities, and, of course, political compromises. Despite some peripheral sparring over the proper aims of the Act and the role of the Commission, the core values that prompted this beneficial legislation have never been abandoned. . . . In reality, the Act protects employees, employers, and the public alike. To be sure, the Act maintains a no-fault compensation system for employees and their families. . . . At the same time, however, the Act also recognizes the need

to protect employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of "caring for the helpless human wreckage found [along] the trail of modern industry."

\*　　\*　　\*

Of course, twenty-five years of experience brought inevitable maturity to the Act, and the Legislature eventually recognized that accidents were not the sole cause of employee harm.　By Chapter 465 of the Acts of 1939, certain occupational diseases were deemed compensable if contracted during the course of employment.　The 1939 amendments to the Act entitled employees disabled or killed by specific enumerated occupational diseases to compensation "as if such disablement or death were an injury by accident."　Ch. 465, § 32B of the Acts of 1939. . . . Eventually, the practice of enumerating specific diseases was abandoned, and all occupational diseases were, subject to certain conditions not here relevant, deemed compensable. . . . As with accidental injuries, the burden of proving a disease as occupational generally fell to the claimant.

\*　　\*　　\*

A little more than three decades after its formal recognition of occupational diseases, the General Assembly turned its attention to certain fire fighters, concluding that they were susceptible to diseases formerly not recognized as occupational. . . . By Chapter 695 of the Acts of 1971, the Legislature amended the Act and granted a presumption of compensability in favor of certain classes of fire fighters suffering from heart or lung disease, or hypertension.

*Polomski v. Mayor & City Council of Baltimore,* 344 Md. 70, 76–78, 684 A.2d 1338, 1340–41 (1996) (footnotes and internal citations omitted).　The Legislature later added additional public safety employees and occupational diseases to the list of persons entitled to a presumption of compensability. *See, e.g.,* Chapter 282 of the Acts of 1972 (expanding the scope to include certain police officers); Chapter 760 of the Acts of 1985 (adding firefighters and others that become disabled

from certain types of cancer); Chapter 179 of the Acts of 1999 (adding Department of Natural Resources employees who are suffering from Lyme disease).

Discussing the predecessor to § 9–503, we noted that it "is reflective of a social policy affording preferential treatment to fire fighters disabled by heart disease." *Montgomery County Fire Board. v. Fisher,* 298 Md. 245, 257, 468 A.2d 625, 632 (1983).[8] The question before us is whether the Legislature intended to extend that preferential treatment to the dependents of those firefighters. Mrs. Johnson and Mrs. Luster frame this question as whether the Legislature intended to extend preferential treatment to live firefighters as well as deceased firefighters. Either way, we think the answer is "yes, but."

We are required to construe the Act " 'as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant' " *Harris v. Board of Education of Howard County,* 375 Md. 21, 57, 825 A.2d 365, 387 (2003) (quoting *Mayor & City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–62 (1995)). Having said that, however, it is also well settled "that the court may not disregard the plain meaning of the Act in the name of liberal construction. . . ." *Mayor & City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 762 (1995). We may not read language into a statute that is not there, even if we are not satisfied with the outcome of the case. "We cannot assume authority to read into the Act what the Legislature apparently deliberately left out." *Howard Contr. Co. v. Yeager,* 184 Md. 503, 511, 41 A.2d 494, 498 (1945). In *Schmeizl v. Schmeizl,* 186 Md. 371, 46 A.2d 619 (1946), while discussing a widow's right to inherit, this Court wrote:

---

8. Clearly, the Legislature extended that "preferential treatment" to firefighters that become disabled from certain types of cancer. Md. Code (1991, 1999 Repl.Vol.), § 9–503(c) of the Labor and Employment Article.

Appellants urge the court to read an exception into the statute of distribution on the theory that the Legislature could never have intended any consequences so unjust. The doctrine of equitable construction, accepted by the Roman law, was introduced in England before the rise of courts of chancery. It was a conception of power, existing side by side with the law yet not in derogation of it.... *But the doctrine giving the judge power to mould the statute in accordance with his notions of justice has no place in our law. We follow the fundamental rule that a court is not at liberty to surmise a legislative intention contrary to the letter of the statute, or to indulge in the license of inserting or omitting words with the view of making the statute express an intention which is not evidenced in the original form. A statute should be construed according to the ordinary and natural import of its language, unless a different meaning is clearly indicated by the context, without resorting to subtle or forced interpretation for the purpose of extending or limiting its operation.* Where there is ambiguity in the provisions of a statute, or the intention of the legislature is doubtful, the court may look to the consequences; but where the language of the statute is clear and explicit, and expresses a definite and sensible meaning, the court cannot disregard the mandate of the Legislature and insert an exception, where none has been made by the Legislature, for the sake of relieving against hardship or injustice.

*Schmeizl,* 186 Md. at 375, 46 A.2d at 621 (emphasis added).

The "preferential treatment" for firefighters mentioned in *Montgomery County Fire Board v. Fisher,* does not pertain to the provision for dual benefits found in § 9–503(e). Rather, the Court specifically referenced the presumption of compensability when addressing the issue of preferential treatment. *See Montgomery County Fire Board. v. Fisher,* 298 Md. 245, 257–58, 468 A.2d 625, 631 (1983) (explaining preferential treatment and stating "[a]lthough the presumption of compensability is a rebuttable one of fact, the legislature manifestly intended that the statute impose a formidable burden on the party against whom it operates. Accordingly, both the burden

of production and the burden of persuasion remain fixed on the employer ..."). The dependents of deceased firefighters, along with living firefighters, are entitled to that statutory presumption of compensability if the firefighters suffer from one of the diseases mentioned in § 9–503.

That does not mean, however, that the dependents of deceased firefighters are entitled to the dual benefits provided to firefighters and others by § 9–503(e). As previously noted, § 9–503(e) does not mention dependents.[9] The language in that section reads as if the Legislature intended to provide benefits to firefighters and (other public safety employees) who are living but unable to work as a result of their occupational diseases.[10]

---

**9.** By stark contrast, there are numerous workers' compensation statute provisions that do mention the treatment of dependents, evidencing the fact that the Legislature has considered dependents and made provisions for them in a number of other workers' compensation scenarios. *See, e.g.,* § 9–501 (requiring compensation to "the dependents of the covered employee for death of the covered employee" resulting from accidental injury); § 9–502 (requiring compensation to dependents of the covered employee for death of the covered employee resulting from an occupational disease); § 9–678 ("A dependent of a covered employee who is entitled to compensation for the death of the covered employee resulting from an accidental personal injury or occupational disease shall be paid compensation in accordance with this Part XII of this subtitle."); § 9–681 (establishing the amount of death benefits to be paid "individuals who were wholly dependent on a deceased covered employee at the time of death resulting from an accidental personal injury or occupational disease"); § 9–682 (establishing the amount of death benefits to be paid individuals who were partly dependent); § 9–683 (establishing a system for payment of death benefits to multiple dependents); § 9–684 (limiting the liability of employers and insurers if there are no dependents); § 9–685 (discussing what happens to benefits if the dependent dies before the death benefit has been paid); § 9–686 (discussing the system for receiving benefits for nonresident alien dependents). That is not an exhaustive list. It is abundantly clear that the Legislature has spent a considerable amount of time and effort providing for the treatment of dependents in workers' compensation cases. If the Legislature intended to provide dependents with the particular benefit urged in the case at bar, it was well able to do so explicitly.

**10.**

(1) Except as provided in paragraph (2) of this subsection, *any paid firefighter ... who is eligible for benefits under subsection (a), (b), (c),*

Mrs. Johnson and Mrs. Luster contend that by refusing them the dual benefits, the Court has treated living firefighters differently from deceased firefighters. Contrary to their assertions, to place living firefighters in a better position (vis-a-vis compensation) than the dependents of deceased firefighters, is not at odds with the overall statutory scheme. For example, § 9–681 of the Labor and Employment Article discusses workers' compensation death benefits for dependents and limits those benefits to two-thirds of the average weekly wage of the deceased covered employee. Md.Code (1991, 1999 Repl. Vol., 2004 Supp.), § 9–681(b) of the Labor and Employment Article. By contrast, § 9–503(e)(2) permits the firefighters to receive dual benefits up to the full amount of their weekly salary. Md.Code (1991, 1999 Repl.Vol., 2004 Supp.) § 9–503(e)(2) of the Labor and Employment Article.

It appears that firefighters who suffer disability as a result of an accidental injury or an occupational disease not mentioned in § 9–503 are also subject to the offset provisions of § 9–610.[11] Moreover, it is clear that the dependents of firefighters who die as a result of accidental injury or occupational disease not mentioned in § 9–503 are subject to the offset provisions of § 9–610. We cannot think of any logical reason why the Legislature would have intended to place the dependents of firefighters who die while saving people from a burning building in a worse position than dependents of

---

or *(d) of this section shall receive the benefits in addition to any benefits that the individual is entitled to receive* under the retirement system in which the *individual* was a participant at the time of the claim.
(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the ... firefighter ...
Md.Code (1991, 1999 Repl.Vol., 2004 Supp.) § 9–503(e) of the Labor and Employment Article (emphasis added).

11. Section 9–610 is a general provision prohibiting the payment of dual benefits in workers' compensation cases. Section 9–503(e) provides an exception to the general rule for particular persons suffering from particular occupational diseases. There is no similar exception provided for in § 9–501, (accidental personal injury), or in § 9–502, (occupational disease in general).

firefighters who die from cancer that they contracted while saving people from a burning building.[12] Without an express statutory provision delineating such a scheme, we will not impose one. The Legislature is not obligated "to treat all public employees in relation to their pension and retirement benefits similarly." *Polomski,* 344 Md. at 83, 684 A.2d at 1344. Similarly, the Legislature is not required to treat the dependents of firefighters in the same manner as the firefighters themselves.

■ Mrs. Johnson and Mrs. Luster argue that our decision in *Breitenbach v. N.B. Handy,* 366 Md. 467, 784 A.2d 569 (2001) requires a different result. We disagree. As noted by this Court in *Breitenbach,* " 'if the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end.' " *Breitenbach,* 366 Md. at 473, 784 A.2d at 572 (citation omitted). It is only when the language is ambiguous that we look to additional sources, such as legislative history or prior case law. *Id.* Section 9–503 is not ambiguous.

Moreover, our interpretation of the statute discussed in *Breitenbach* does not illuminate the situation before us. In that case, we read Md.Code (1991, 1999 Repl. Vol.), § 9–660(a)(1) of the Labor & Employment Article to be sufficiently broad to encompass reasonable travel expenses to and from medical treatments, the cost of which are covered under the statute. *Breitenbach,* 366 Md. at 482, 784 A.2d at 579. The statute notes that the Commission may require payment of "medical, surgical, or other attendance or treatment," to a covered employee who has suffered an accidental personal injury, compensable hernia, or occupational disease. *Breitenbach,* 366 Md. at 475, 784 A.2d at 574. In addition, we

---

12. *See Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.,* 358 Md. 129, 135, 747 A.2d 625, 628 (2000) (noting that we may consider " 'the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.' ").

interpreted § 9–674 of the Labor & Employment Article to "place an obligation on employers and insurers to pay for the transportation expenses of all claimants receiving vocational rehabilitation services except, in unusual circumstances, those receiving vocational rehabilitation training." *Breitenbach,* 366 Md. at 482, 784 A.2d at 578. We reached that result by concluding that the limited restriction on transportation, found in § 9–674, implied that there was a general benefit for transportation expenses. Concluding that § 9–660 was ambiguous regarding the reimbursement of travel expenses, we considered the affect of § 9–674 on § 9–660 and applied the "rule of liberal construction" to resolve the ambiguity in favor of the claimant. *Breitenbach,* 366 Md. at 484, 784 A.2d at 579.

The present case bears no resemblance to the circumstances just described. The statute in the instant case is not ambiguous. Moreover, even if it were, a review of the treatment of dependents throughout the Act would lead to the same result. In the present case, there is no limited restriction on benefits that implies a general entitlement to benefits. Rather, there is a general restriction on collecting dual benefits (§ 9–610) and a limited exception for certain public safety workers suffering from particular occupational diseases (§ 9–503).

Mrs. Johnson and Mrs. Luster also argue that our decision in *United States v. Streidel,* 329 Md. 533, 620 A.2d 905 (1993) requires us to decide in their favor. Again, we disagree. In *Streidel,* we concluded that the limitation on noneconomic damages in personal injury cases did not apply to wrongful death actions. *Streidel,* 329 Md. at 537, 620 A.2d at 907. We reached that decision by relying on "the language of the statute and its context, the extensive legislative history, and the practical and unresolved difficulties of applying the cap statute to reduce an award of damages in a wrongful death action ..." *Streidel,* 329 Md. at 539, 620 A.2d at 908–09. The statute at issue in that case limits the award for noneconomic damages in " 'any action for damages for personal injury....' " *Streidel,* 329 Md. at 537, 620 A.2d at 908 (quoting § 11–108 of the Courts and Judicial Proceedings Article). We considered significant the fact that the statute did not say

"personal injury, or death", when determining that the statute did not apply to wrongful death actions. *Streidel,* 329 Md. at 540, 620 A.2d at 911. In addition, we noted that the "remainder of the cap statute, when read as a whole, indicates that the General Assembly did not intend 'personal injury' to include those damages recoverable in a wrongful death action." *Streidel,* 329 Md. at 544, 620 A.2d at 911.

Similarly, the statute before the Court in this case makes no mention of dependents and we have decided, (in view of the plain language of § 9–503(e) and the application of § 9–610 of the Labor and Employment Article), that it does not apply to them. We also considered the rest of the Act's treatment of dependents and concluded that our decision fits within that structure. Our method of decision is consistent with the reasoning in *Streidel.*[13] In fact, that case contains the following relevant admonition:

> Although the inclusion of wrongful death actions might well be consistent with the principal purpose of the cap statute,

---

**13.** Although Mrs. Johnson and Mrs. Luster rely on our decision in *Streidel,* our brief discussion of the Workers' Compensation Act in *Streidel* is not particularly helpful to the question before us and does not change the analysis. We stated:

> Similarly, in Code (1991), § 9–101 of the Labor and Employment Article, the Worker's Compensation Act defines an accidental personal injury in part as "an accidental injury that arises out of and in the course of employment." No express reference is made in this definitional section to whether an accidental personal injury includes wrongful death. The Worker's Compensation Act, however, from the time of its enactment in 1914, has included a section outlining a system of compensation for the family of a decedent, in the event of a death which arises out of and occurs in the course of employment. Consequently, compensation for an "injury" under the Worker's Compensation Act includes compensation for a decedent's family in the event of an accidental death.

*Streidel,* 329 Md. at 543, 620 A.2d at 911. There is no question that dependents of deceased firefighters are entitled to collect benefits in the event of a death arising out of and in the course of employment, either from accidental injury or from occupational disease. Md.Code (1991, 1999 Repl. Vol.), § 9–678 of the Labor and Employment Article. The amount of compensation for a decedent's family, however, is expressly limited by § 9–610. Our brief discussion of the Workers' Compensation Act in *Streidel* did not address the question of dual benefits or limitations on benefits.

there are many other ways in which the statute could be broadened that would also be consistent with its principle purpose. Amending the statute, however, is not the function of the judiciary. Inclusion of wrongful death actions is not consistent with the language, context and legislative history of the cap statute . . . we are not free to rewrite a statute merely because the Court believes that the legislature's purpose would have been more effectively advanced by an additional provision.

*Streidel,* 329 Md. at 550, 620 A.2d at 914.

In the instant case, it is clear that the Legislature found it acceptable to treat living firefighters suffering from certain cancers and other occupational diseases differently than the dependents of those firefighters. While that result may seem unfair to some, the Court is not free to ignore the statutory requirements in order to remedy any perceived unfairness. The Workers' Compensation Act " 'reflects the Legislature's considered judgment as to the appropriate allocation of resources between employers, employees, and the taxpayers of this State.' " *Ametek v. O'Connor,* 364 Md. 143, 157, 771 A.2d 1072, 1080 (2001) (citation omitted). In view of that admonition, we will not violate the statutory mandate in any particular case in an attempt to avoid a perceived unjust result. *See State Retirement and Pension System v. Thompson,* 368 Md. 53, 67–71, 792 A.2d 277, 285–88 (2002) (discussing a case in which a claimant received reduced disability retirement benefits because he was also receiving workers' compensation benefits and refusing to permit the Circuit Court to order the State Retirement and Pension System to pay the claimant more than the relevant statutes permitted, even though the claimant was in a difficult financial position).

We have previously noted that the Legislature must be the body to remedy any unfairness in the Workers' Compensation Act, should they consider it necessary. *Gleneagles, Inc. v. Hanks,* 385 Md. 492, 869 A.2d 852, 860 (2005). As this Court stated in *Paul v. Glidden,* 184 Md. 114, 39 A.2d 544 (1944),

[t]he Workmen's Compensation Act was passed to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages for their injuries. There were, in its first enactment, certain inequalities which have, from time to time, been corrected by amendment. There may be a need for further amendment. As to this, we express no opinion, as it is not within our province. Some of the present provisions may be inequitable. To consider this, is also outside the scope of our duties. The enactment is made in pursuance of the police power ... and the details must be left to the judgment of the Legislature, unless some basic right is infringed.

*Glidden,* 184 Md. at 119, 39 A.2d at 546.

## CONCLUSION

In conclusion, we hold that the language of §§ 9–503 and 9–610 is clear and unambiguous. Section 9–503(e) provides an exception to the general offset rule for firefighters and other public safety employees suffering from particular occupational diseases, enabling them to collect dual benefits while they are living. It does not, however, provide that same exception to the dependents of those individuals.

**JUDGMENTS OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS IN COURT OF SPECIAL APPEALS AND COURT OF APPEALS.**

BATTAGLIA, J., Dissents.

Dissenting Opinion by BATTAGLIA, J.

I respectfully dissent.

In this case we have been asked to decide if under Section 9–503(e) of the Labor and Employment Article dependents of firefighters who die from cancer contracted during the course of employment may collect full worker's compensation death benefits and retirement benefits to which a firefighter who

survives cancer would be entitled. According to the Majority, when a firefighter survives, he or she is entitled to receive both worker's compensation benefits and retirement benefits, but if the firefighter perishes from cancer contracted during his or her employment, then the general worker's compensation off-set provision contained in Section 9–610(a)(1) applies, substantially reducing the benefits to the dependents of those firefighters who themselves would otherwise be entitled to the dual benefits. The Majority's argument is premised upon the absence of the word "dependents" in Section 9–503(e). I disagree, and would hold that Section 9–503(e) permits the dependents of firefighters who die from an occupational cancer to collect full worker's compensation death benefits and retirement benefits.

Section 9–503(e) states in pertinent part:

(1) Except as provided in paragraph (2) of this subsection, any paid firefighter ... who is eligible for benefits under subsection (a), (b), (c), or (d) of this section shall receive the benefits in addition to any benefits that the individual is entitled to receive under the retirement system in which the individual was a participant at the time of the claim.

(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the ... firefighter.

This Court has often stated that our goal in interpreting statutes is to "identify and effectuate the legislative intent underlying the statute(s) at issue." *Serio v. Baltimore County,* 384 Md. 373, 863 A.2d 952, 962 (2004), quoting *Drew v. First Guaranty Mortgage Corp.,* 379 Md. 318, 327, 842 A.2d 1, 6 (2003), in turn quoting *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000); *Pete v. State,* 384 Md. 47, 57–58, 862 A.2d 419, 425 (2004); *Graves v. State,* 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001). As we have stated, the best source of legislative intent is the statute's plain language and when the language is clear and unambiguous, our inquiry ordinarily ends there. *Serio,* 384 Md. at 373, 863 A.2d at 962; *Pete,* 384

Md. at 57–58, 862 A.2d at 425; *Drew,* 379 Md. at 327, 842 A.2d at 6; *Beyer v. Morgan State Univ.,* 369 Md. 335, 349, 800 A.2d 707, 715 (2002); *Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347, 1350 (1995). Although the plain language of the statute guides our understanding of legislative intent, we do not read the language in a vacuum. *See Serio,* 384 Md. at 373, 863 A.2d at 962; *Drew,* 379 Md. at 327, 842 A.2d at 6; *Derry,* 358 Md. at 336, 748 A.2d at 483–84. Rather, we read statutory language within the context of the statutory scheme, considering the "purpose, aim, or policy of the enacting body." *Serio,* 384 Md. at 373, 863 A.2d at 962; *Pete,* 384 Md. at 57–58, 862 A.2d at 425; *Drew,* 379 Md. at 327, 842 A.2d at 6; *Beyer,* 369 Md. at 350, 800 A.2d at 715; *In re Mark M.,* 365 Md. 687, 711, 782 A.2d 332, 346 (2001)(quoting *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992)). We have stated that,

> [w]hen we pursue the context of statutory language, we are not limited to the words of the statute as they are printed. . . . We may and often must consider other "external manifestations" or "persuasive evidence," including . . . . other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

*Williams v. Mayor and City Council of Baltimore,* 359 Md. 101, 116, 753 A.2d 41, 49 (2000) (quoting *Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628, 632–33 (1987)). When interpreting the language of a statute, "we assign the words their ordinary and natural meaning." *Serio,* 384 Md. at 373, 863 A.2d at 962; *Pete,* 384 Md. at 57–58, 862 A.2d at 425; *O'Connor v. Baltimore County,* 382 Md. 102, 114, 854 A.2d 1191, 1198 (2004); *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998). Thus, the provisions must be read in "a commonsensical perspective to avoid a farfetched interpretation." *Serio,* 384 Md. at 373, 863 A.2d at 962; *Graves v. State,* 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001); *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994); *Dickerson v. State,* 324 Md. 163, 171, 596 A.2d 648, 652 (1991).

At the heart of this matter is the General Assembly's intent in creating the presumption of compensability for certain occupational diseases and the provision entitling firefighters and other specified public employees to worker's compensation and retirement benefits. We have often stated that the Worker's Compensation Act is remedial in nature and "should be construed as liberally in favor of the injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant." *Harris v. Board of Education of Howard County,* 375 Md. 21, 57, 825 A.2d 365, 387 (2003) (quoting *Mayor & City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–62 (1995)). As this Court has explained, the Act's purposes include "protecting workers and their families from hardships inflicted by work-related injuries," "preventing the State and its taxpayers from having to care for injured workmen and their dependents," and providing "sure and certain relief for workmen injured in extrahazardous employment and their families and dependents...." *B. Frank Joy Co. v. Isaac,* 333 Md. 628, 634, 636 A.2d 1016, 1019 (1994) (quoting the Preamble to 1914 Md. Laws, Chap. 800). When effectuating the "benevolent purposes" of the Act, this Court has opined that "all sections of the Act must be read together, in conjunction with one another, to discern the true intent of the legislature." *Breitenbach v. N.B. Handy,* 366 Md. 467, 472, 784 A.2d 569, 572 (2001). Thus, contrary to the Majority's emphasis on the absence of the term "dependents" in the statute to justify its outcome, Section 9–503(e) must be considered in light of the overall history and purpose of its enactment and should not be read in a vacuum. *Id.* at 482–87, 784 A.2d at 577–81.

Section 9–502 of the Act requires that employers and insurers compensate covered employees and their dependents for a disability or death that results from an occupational disease: "a covered employee of the employer for disability of the covered employee resulting from an occupational disease; *or the dependents of the covered employee for death of the covered employee resulting from an occupational disease.*"

Md.Code, § 9–502(c) of the Labor and Employment Article (emphasis added). The statute limits the liability of the employer/insurer by providing that compensation only must be paid if:

(1) the occupational disease that caused the death or disability: (i) is due to the nature of an employment in which hazards of the occupational disease exist and the covered employee was employed before the date of disablement; or (ii) has manifestations that are consistent with those known to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment in which the covered employee was employed before the date of disablement; and

(2) on the weight of the evidence, it reasonably may be concluded that the occupational disease was incurred as a result of the employment of the covered employee.

Md.Code (1991, 1999 Repl.Vol., 2004 Cum.Supp.), § 9–502(d) of the Labor and Employment Article.

In the very next section, 9–503, firefighters and other specified public employees suffering from certain occupational diseases, including heart disease and cancer, are "presumed to be suffering from an occupational disease that was suffered in the line of duty and is compensable." Md.Code (1991, 1999 Repl.Vol., 2004 Cum.Supp.), § 9–503 of the Labor and Employment Article. Section 9–503 was derived from former Maryland Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.) Article 101, § 64A; its purpose was clearly set forth in Chapter 695 of the Acts of 1971:

An Act to add new Section 64A to Article 101 of the Annotated Code of Maryland (1970 Supplement), title "Workman's Compensation," *to follow immediately after Section 64 thereof, to provide that there is a presumption of compensable occupational disease in cases of certain fire fighters sustaining temporary or total disability or death under certain conditions, and to provide that benefits may also be payable under a retirement system under certain conditions.*

1971 Md. Laws, Chap. 695 (emphasis added). The Act, entitled "Death and Disability Payments—Fire Fighters" stated in part:

Any condition or impairment of health of any paid municipal, county, airport authority, or fire control district fire fighter caused by lung diseases, heart diseases, or hypertension resulting in total or partial disability or death shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of his employment.

1971 Md. Laws, Chap. 695. In 1985, this section was amended to include throat, prostate, rectal or pancreatic cancer, and leukemia, see Md.Code (1957, 1985 Repl.Vol., 1990 Cum. Supp.), Art. 101, § 64A(b), and has been recodified into the current Sections 9–503(a) through (d) of the Labor and Employment Article. See 1991 Md. Laws, Chap. 8, § 2.

We have consistently recognized the legislative intent underlying the presumption of compensability under Section 9–503 for firefighters suffering from an occupational disease: "[T]he Maryland legislature created the presumption in light of the general public knowledge that firefighters in the course of their daily activities are exposed to inhalation of smoke or noxious fumes and are subjected to unusual stresses and strains." Montgomery County Fire Board v. Fisher, 298 Md. 245, 256, 468 A.2d 625, 630 (1983). Furthermore, the presumption is

reflective of a social policy affording preferential treatment to firefighters disabled by heart disease. Although the presumption of compensability is a rebuttable one of fact, the legislature manifestly intended that the statute impose a formidable burden on the party against whom it operates.

Id. at 257, 468 A.2d at 631.

Section 9–503(e), which permits firefighters suffering from one of the enumerated occupational diseases to collect worker's compensation benefits and retirement benefits up to the amount of the firefighter's weekly salary, also was derived from former Section 64A of the Code, which stated:

Notwithstanding any provision of this article any paid fire fighter whose compensable claim results from a condition or impairment of health caused by lung diseases, heart diseases or hypertension and has been suffered in the line of duty shall receive such benefits as are provided for in this article in addition to such benefits as he may be entitled to under the retirement system in which said fire fighter was a participant at the time of his claim. The benefits received under this article however, shall be adjusted so that the total of all weekly benefits shall not exceed one hundred percent of the weekly salary which was paid to said fire fighter.

1971 Md. Laws, Chap. 695. Language was added in 1985 to add firefighters with cancer. *See* Md.Code (1957, 1985 Repl. Vol.), Art. 101, § 64A(b). The statutory language was recodified without substantive change into the current Section 9–503(e) and underscores the notion that "fire fighters are exposed to health hazards not shared by other government employees." *Board of County Commissioners for Prince George's County v. Colgan,* 274 Md. 193, 208, 334 A.2d 89, 97 (1975).

Essentially, the statutes when read in relation to one another provide that a firefighter diagnosed with one of the enumerated diseases in Section 9–503 is *presumed* to have satisfied the requirements of Section 9–502(d) that he or she is suffering from a prescribed occupational disease that resulted from the hazardous nature of the job. The remaining provisions of Section 9–502, that the employer/insurer must compensate the covered employee and their dependents, are still applicable; thus, it is entirely permissible for dependents of firefighters who suffer from cancer or heart disease to rely on the same presumption of compensability to receive all of the benefits afforded to the firefighter under Section 9–503(e), even though the term "dependents" is not mentioned in that provision.

The Majority places significance on the absence of the term "dependents" in Section 9–503(e) because in its view "the language reads as if it only pertains to the individuals men-

tioned in the statute.... Those *individuals* shall receive the worker's compensation benefits 'in addition to any benefits that the individual is entitled to receive....'" Maj. op. at 9, 874 A.2d at 444 (emphasis added in original). Apparently, the Majority relies on the juxtaposition of the word "individual" in Section 9–503(e) against the listing of specified public service employees in the same section in order to exclude dependents. The Revisor's Notes to Section 9–503, however, explain the use of the term "individual" : "the word 'individual' is substituted for the former word 'person', since only a human being may be a firefighter, fire fighting instructor, or rescue squad member. As to the definition of 'person,' see § 1–101 of this article [Labor and Employment]." 1991 Md. Laws, Chap. 8, § 2, Revisor's Notes.[1] Therefore, the Majority's reliance on the term "individual" to conclude that Section 9–503(e) does not contemplate dependents is misplaced and reads more into the language than was intended by the General Assembly.[2]

Likewise, the Majority states that the "language in [Section 9–503(e) ] reads as if the Legislature intended to provide benefits to firefighters and (other public safety employees) who are *living* but unable to work as a result of their occupational diseases." Maj. op. at 16–17, 874 A.2d at 448–49 (emphasis added). In essence, the Majority's holding awards the more favorable benefits to those firefighters who have the good fortune of surviving their cancer, but denies those benefits to the widows and children dependent on those firefighters whose lives were lost. Such a narrow construction of the

---

1. Md.Code (1991, 1999 Repl.Vol., 2004 Cum.Supp.), § 1–101 of the Labor and Employment Article, defines a "person" as: "an individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation, or other entity."

2. The Majority also points to various provisions of the Act that specifically refer to the dependents of a deceased worker as evidence that the absence of "dependents" in Section 9–503(e) means that the General Assembly did not intend to provide the same benefits to dependents under this off-set provision. I note, however, that none of the referenced sections contain an exclusion for benefits resulting from an occupational disease established under the Section 9–503 presumption.

statute in light of the General Assembly's focus on protecting firefighters in recognition of the many hazards they face, is contrary to the General Assembly's expressed concern for those firefighters who sacrifice their lives in the line of duty.

In the cases *sub judice*, there is no dispute that the spouses were wholly dependent on the firefighters who died from their occupational cancers and that the underlying worker's compensation death claim was compensable. A liberal construction of Section 9–503(e) in favor of deceased firefighters supports the benevolent purposes of the statute and the conclusion that the firefighters qualified for the worker's compensation benefits in addition to the retirement benefits. Because I would hold that the firefighters themselves are entitled to full benefits in recognition of their great sacrifices to protect our communities while in the line of duty, the dependents also should be entitled to those benefits. Therefore, I respectfully dissent.